# EXHIBIT 1

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

ELECTRONICALLY FILED
Superior Court of California
County of Alameda
08/31/2023
Chad Finke, Executive Officer / Clerk of the Court
By: D. Drew Deputy

**NOTICE TO DEFENDANT:**
***(AVISO AL DEMANDADO):***
3M COMPANY, et al. (See additional parties attachment)

**YOU ARE BEING SUED BY PLAINTIFF:**
***(LO ESTÁ DEMANDANDO EL DEMANDANTE):***
JAY W. SANDERS, JR. and JUDY M. SANDERS

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Alameda County Superior Court
1225 Fallon Street, Oakland CA 94612

CASE NUMBER:
*(Número del Caso):*
23CV041073 23CV041073

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Roger E. Gold, Gold Law Firm, 591 Redwood Highway, Bldg. 4000, Mill Valley, CA 94941 415-669-6990

Chad Finke, Executive Officer / Clerk of the Court

DATE: *(Fecha)* 08/24/2023 Clerk, by *(Secretario)* D. Drew, Deputy *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citation use el formulario Proof of Service of Summons, (POS-010))*

[SEAL]




**NOTICE TO THE PERSON SERVED:** You are served
1. [ ] as an individual defendant.
2. [X] as the person sued under the fictitious name of *(specify)*: DOE 4
3. [x] on behalf of *(specify)*: AIR & LIQUID SYSTEMS CORPORATION, BUFFALO PUMPS DIVISION

under: [X] CCP 416.10 (corporation) [ ] CCP 416.60 (minor)
[ ] CCP 416.20 (defunct corporation) [ ] CCP 416.70 (conservatee)
[ ] CCP 416.40 (association or partnership) [ ] CCP 416.90 (authorized person)
[ ] other *(specify)*:
4. [ ] by personal delivery on *(date)*:

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
| --- | --- |
| JAY W. SANDERS, JR., et al. v. 3M COMPANY, et al. | 23CV041073 |

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff ☒ Defendant ☐ Cross-Complainant ☐ Cross-Defendant

ALLIED PACKING;
ARMSTRONG INTERNATIONAL, INC.;
A.W. CHESTERTON COMPANY;
AURORA PUMP COMPANY;
CROSBY VALVE, LLC;
DCO LLC, f/k/a DANA COMPANIES, LLC, individually and as successor-by-merger to DANA CORPORATION, f/k/a SPICER MANUFACTURING and as successor-in-interest to VICTOR GASKET MANUFACTURING COMPANY;
ELLIOT COMPANY;
FMC CORPORATION, ON BEHALF OF ITS FORMER PEERLESS PUMP, CHICAGO PUMP AND NORTHERN PUMP BUSINESSES;
GOULDS PUMPS LLC;
GREENE, TWEED & CO.;
HILL BROTHERS CHEMICAL COMPANY;
IMO INDUSTRIES, INC. (FKA IMO DELAVAL INC.);
J.T. THORPE & SON, INC.;
METALCLAD INSULATION LLC, INDIVIDUALLY & AS SUCCESSOR-IN-INTEREST TO NORTHERN CALIFORNIA INSULATION, INC.;
PAR SYSTEMS LLC SII C.H. WHEELER;
PARKER-HANNIFIN CORPORATION, AS SUCCESSOR-IN-INTEREST TO SACOMO SIERRA AND SACOMO MANUFACTURING COMPANY;
PARAMOUNT GLOBAL F/K/A VIACOMCBS INC., F/K/A CBS CORPORATION, A DELAWARE CORPORATION, F/K/A VIACOM INC., SUCCESSOR BY MERGER TO CBS CORPORATION, A PENNSYLVANIA CORPORATION, F/K/A WESTINGHOUSE ELECTRIC CORPORATION;
SB DECKING, INC. f/k/a Selby, Battersby & Company;
SOCO-LYNCH CORPORATION;
SPIRAX SARCO, INC.
THOMAS DEE ENGINEERING COMPANY, INC.;
THE GOODYEAR TIRE & RUBBER COMPANY;
THE WILLIAM POWELL COMPANY;
UNION CARBIDE CORPORATION;
VALVES AND CONTROLS US, INC. F/K/A WEIR VALVES & CONTROLS USA, INC. F/K/A ATWOOD & MORRILL CO., INC.;
VELAN VALVE CORP.;
YORK INTERNATIONAL CORPORATION, INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO CENTRAL ENVIRONMENTAL SYSTEMS, INC., F/K/A BORG-WARNER CENTRAL ENVIRONMENTAL SYSTEMS, INC.;
AND THE FIRST DOE THROUGH THREE HUNDREDTH DOE, INCLUSIVE



Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

ROGER E. GOLD (State Bar No. 214802)
rgold@rgoldlegal.com
CECIL B. CRAIN (State Bar No. 252780)
ccrain@rgoldlegal.com
MIA MATTIS (State Bar No. 191027)
mmattis@rgoldlegal.com
GOLD LAW FIRM
591 Redwood Highway, Bldg. 4000
Mill Valley, CA 94941
Tel: (415) 869-6990
Fax (415) 373-4579

**ELECTRONICALLY FILED**
Superior Court of California,
County of Alameda
**08/18/2023 at 07:36:48 PM**
By: Chan Huang,
Deputy Clerk

Attorneys for Plaintiffs JAY W. SANDERS, JR. et al.

**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF ALAMEDA**

(UNLIMITED JURISDICTION)

| | |
|---|---|
| JAY W. SANDERS, JR., and JUDY M. SANDERS<br><br>Plaintiffs,<br><br>VS.<br><br>3M COMPANY;<br>ALLIED PACKING;<br>ARMSTRONG INTERNATIONAL, INC.;<br>A.W. CHESTERTON COMPANY;<br>AURORA PUMP COMPANY;<br>CROSBY VALVE, LLC;<br>DCO LLC, f/k/a DANA COMPANIES, LLC, individually and as successor-by-merger to DANA CORPORATION, f/k/a SPICER MANUFACTURING and as successor-in-interest to VICTOR GASKET MANUFACTURING COMPANY;<br>ELLIOT COMPANY;<br>FMC CORPORATION, ON BEHALF OF ITS FORMER PEERLESS PUMP, CHICAGO PUMP AND NORTHERN PUMP BUSINESSES;<br>GOULDS PUMPS LLC;<br>GREENE, TWEED & CO.;<br>HILL BROTHERS CHEMICAL COMPANY;<br>IMO INDUSTRIES, INC. (FKA IMO DELAVAL INC.); | No. 23CV041073<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. NEGLIGENCE<br>2. STRICT LIABILITY<br>3. FALSE REPRESENTATION<br>4. PREMISES/CONTRACTOR LIABILITY<br>5. LOSS OF CONSORTIUM<br><br>And Prayer for PUNITIVE DAMAGES<br><br>(Asbestos – Personal Injury) |

J.T. THORPE & SON, INC.;
METALCLAD INSULATION LLC, INDIVIDUALLY & AS SUCCESSOR-IN-INTEREST TO NORTHERN CALIFORNIA INSULATION, INC.;
PAR SYSTEMS LLC SII C.H. WHEELER;
PARKER-HANNIFIN CORPORATION, AS SUCCESSOR-IN-INTEREST TO SACOMO SIERRA AND SACOMO MANUFACTURING COMPANY;
PARAMOUNT GLOBAL F/K/A VIACOMCBS INC., F/K/A CBS CORPORATION, A DELAWARE CORPORATION, F/K/A VIACOM INC., SUCCESSOR BY MERGER TO CBS CORPORATION, A PENNSYLVANIA CORPORATION, F/K/A WESTINGHOUSE ELECTRIC CORPORATION;
SB DECKING, INC. f/k/a Selby, Battersby & Company;
SOCO-LYNCH CORPORATION;
SPIRAX SARCO, INC.
THOMAS DEE ENGINEERING COMPANY, INC.;
THE GOODYEAR TIRE & RUBBER COMPANY;
THE WILLIAM POWELL COMPANY;
UNION CARBIDE CORPORATION;
VALVES AND CONTROLS US, INC. F/K/A WEIR VALVES & CONTROLS USA, INC. F/K/A ATWOOD & MORRILL CO., INC.;
VELAN VALVE CORP.;
YORK INTERNATIONAL CORPORATION, INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO CENTRAL ENVIRONMENTAL SYSTEMS, INC., F/K/A BORG-WARNER CENTRAL ENVIRONMENTAL SYSTEMS, INC.;
AND THE FIRST DOE THROUGH THREE HUNDREDTH DOE, INCLUSIVE,

Defendants.

## GENERAL ALLEGATIONS

1. The Plaintiffs in this matter are JAY W. SANDERS, JR. and his spouse, JUDY M. SANDERS. The Plaintiffs in this matter shall herein be referred to as "Plaintiffs."

2. Plaintiff JAY W. SANDERS, JR. and his spouse, JUDY M. SANDERS, are at all times referenced herein, legally married.

3. Plaintiff JAY W. SANDERS, JR. suffers from mesothelioma, an always fatal form of cancer only caused by exposure to asbestos. Plaintiff JAY W. SANDERS, JR. was diagnosed with malignant pleural mesothelioma in approximately July of 2023.

4. The true names and capacities, whether individual, corporate, associate, governmental or otherwise, of defendants FIRST DOE through THREE HUNDREDTH DOE, inclusive, are unknown to plaintiffs at this time, who therefore sue said defendants by such fictitious names. When the true names and capacities of said defendants have been ascertained, plaintiff will amend this complaint accordingly. Plaintiffs are informed and believe, and thereon allege, that each defendant designated herein as a DOE is responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to, and caused injuries and damages proximately thereby to the Plaintiffs, as hereinafter alleged.

5. At all times herein mentioned, each of the defendants, except as otherwise alleged, was the agent, servant, employee and/or joint venturer of co-defendants, and each of them, and at all said times, each defendant was acting in the full course and scope of said agency, service, employment and/or joint venture. Plaintiffs do not allege that Asbestos Corporation Limited was the agent, servant, employee and/or joint venturer of any entity during any of the years Asbestos Corporation Limited was owned by any governmental agency. Certain defendants agreed and conspired among themselves and with certain other individuals and/or entities, to act, or not to act, in such a manner that resulted in injury to the Plaintiff, JAY W. SANDERS, JR.; and such defendants, as co-conspirators, are liable for the acts, or failures to act, of other conspiring defendants. Plaintiffs are informed and believe, and allege, that at all times herein mentioned defendants FIRST DOE through THREE HUNDREDTH DOE, inclusive, were and are authorized to do business in the State of California, and that said defendants have regularly conducted business in the County of Alameda, State of California.

6. Plaintiffs are informed and believe, and thereon allege that at all times herein mentioned, each defendant named herein and FIRST DOE through THREE HUNDREDTH DOE, inclusive, were and are corporations organized and existing under and by virtue of the laws of the State of

California, or the laws of some other state or foreign jurisdiction, and that said defendants, and each of them, were and are authorized to do and are doing business in the State of California, and that said defendants have regularly conducted business in the County of Alameda.

**FIRST CAUSE OF ACTION-NEGLIGENCE**

**(Personal Injuries)**

PLAINTIFFS COMPLAIN OF DEFENDANTS, EACH OF THEM, AND FOR A CAUSE OF ACTION FOR NEGLIGENCE (PERSONAL INJURIES) ALLEGE:

7. The true names and capacities, whether individual, corporate, associate, governmental or otherwise, of defendants FIRST DOE through THREE HUNDREDTH DOE, inclusive, are unknown to plaintiffs at this time, who therefore sue said defendants by such fictitious names. When the true names and capacities of said defendants have been ascertained, plaintiffs will amend this Complaint accordingly. Plaintiffs are informed and believe and thereon allege that each defendant designated herein as a DOE is responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to, and caused injuries and damages proximately thereby to the plaintiffs, as hereinafter alleged.

At all times herein mentioned, each of the defendants was the agent, servant, employee and/or joint venturer of his co-defendants, and each of them, and at all said times, each defendant was acting in the full course and scope of said agency, service, employment and/or joint venture. Plaintiffs are informed and believes, and thereon alleges, that at all times herein mentioned, defendants:

3M COMPANY;

ALLIED PACKING;

ARMSTRONG INTERNATIONAL, INC.;

A.W. CHESTERTON COMPANY;

AURORA PUMP COMPANY;

CROSBY VALVE, LLC;

DCO LLC, f/k/a DANA COMPANIES, LLC, individually and as successor-by-merger to DANA CORPORATION, f/k/a SPICER MANUFACTURING and as successor-in-interest to VICTOR GASKET MANUFACTURING COMPANY;

ELLIOT COMPANY;
FMC CORPORATION, ON BEHALF OF ITS FORMER PEERLESS PUMP, CHICAGO PUMP AND NORTHERN PUMP BUSINESSES;
GOULDS PUMPS LLC;
GREENE, TWEED & CO.;
HILL BROTHERS CHEMICAL COMPANY;
IMO INDUSTRIES, INC. (FKA IMO DELAVAL INC.);
J.T. THORPE & SON, INC.;
METALCLAD INSULATION LLC, INDIVIDUALLY & AS SUCCESSOR-IN-INTEREST TO NORTHERN CALIFORNIA INSULATION, INC.;
PAR SYSTEMS LLC SII C.H. WHEELER;
PARKER-HANNIFIN CORPORATION, AS SUCCESSOR-IN-INTEREST TO SACOMO SIERRA AND SACOMO MANUFACTURING COMPANY;
PARAMOUNT GLOBAL F/K/A VIACOMCBS INC., F/K/A CBS CORPORATION, A DELAWARE CORPORATION, F/K/A VIACOM INC., SUCCESSOR BY MERGER TO CBS CORPORATION, A PENNSYLVANIA CORPORATION, F/K/A WESTINGHOUSE ELECTRIC CORPORATION;
SB DECKING, INC. f/k/a Selby, Battersby & Company;
SOCO-LYNCH CORPORATION;
SPIRAX SARCO, INC.
THOMAS DEE ENGINEERING CO., INC.;
THE GOODYEAR TIRE & RUBBER COMPANY;
THE WILLIAM POWELL COMPANY;
UNION CARBIDE CORPORATION;
VALVES AND CONTROLS US, INC. F/K/A WEIR VALVES & CONTROLS USA, INC. F/K/A ATWOOD & MORRILL CO., INC.;
VELAN VALVE CORP.;
YORK INTERNATIONAL CORPORATION, INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO CENTRAL ENVIRONMENTAL SYSTEMS, INC.,

F/K/A BORG-WARNER CENTRAL ENVIRONMENTAL SYSTEMS, INC.; AND THE FIRST DOE THROUGH THREE HUNDREDTH DOE, inclusive, are corporations organized and existing under and by virtue of the laws of the State of California, or the laws of some state or foreign jurisdiction, and that said defendants were and are authorized to do and are doing business in the State of California, and that said defendants have regularly conducted business in the City and County of Alameda, State of California. The defendants identified in this paragraph are collectively hereinafter referred to as **"ASBESTOS DEFENDANTS."**

8. At all times herein mentioned, each of the **ASBESTOS DEFENDANTS** was the successor, successor in business, successor in product line or a portion thereof, parent, subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an entity researching, studying, manufacturing, fabricating, designing, labeling, assembling, distributing, leasing, buying, offering for sale, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, handling, modifying, scraping, disturbing, manufacturing for others, packaging and/or advertising a certain substance the generic name for which is asbestos, and other products containing said substance. Said entities shall hereinafter collectively be called "alternate entities". Each of the herein named **ASBESTOS DEFENDANTS** are liable for the tortuous conduct of each successor, successor in business, successor in product line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent, subsidiary, alter-ego, whole or partial owner, or wholly or partially owned entity, or entity that it as a member of, or funded, that researched, studied, manufactured, fabricated, designed, labeled, assembled, distributed, leased, bought, offered for sale, sold, inspected, serviced, installed, contracted for installation, repaired, swept up, abated, discarded, removed, drilled, supplied, marketed, warranted, rebranded, manufactured for others and advertised a certain substance, the generic name of which is asbestos, and other products containing said substance. The following **ASBESTOS DEFENDANTS**, and each of them, are liable for the acts of each and every "alternate entity", and each of them, in that there has been a virtual destruction of plaintiff's remedy against each such "alternate entity"; **ASBESTOS DEFENDANTS**, and each of them, have acquired the assets, product line, or apportion thereof, of each such "alternate entity"; **ASBESTOS DEFENDANTS**, and each of them, caused the destruction of plaintiff's remedy

against each such "alternate entity"; each such **ASBESTOS DEFENDANTS** has the ability to assume the risk-spreading role of each such "alternate entity"; and that each such **ASBESTOS DEFENDANTS** enjoys the goodwill originally attached to each such "alternate entity."

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| DCO LLC | f/k/a DANA COMPANIES, LLC, individually and as successor-by-merger to DANA CORPORATION, f/k/a SPICER MANUFACTURING and as successor-in interest to VICTOR GASKET MANUFACTURING COMPANY |
| FMC CORPORATION | ON BEHALF OF ITS FORMER PEERLESS PUMP, CHICAGO PUMP AND NORTHERN PUMP BUSINESSES |
| IMO INDUSTRIES, INC. | FKA IMO DELAVAL INC. |
| METALCLAD INSULATION LLC | INDIVIDUALLY & AS SUCCESSOR-IN-INTEREST TO NORTHERN CALIFORNIA INSULATION, INC. |
| PARKER-HANNIFIN CORPORATION | AS SUCCESSOR-IN-INTEREST TO SACOMO SIERRA AND SACOMO MANUFACTURING COMPANY |
| PARAMOUNT GLOBAL | F/K/A VIACOMCBS INC., F/K/A CBS CORPORATION, A DELAWARE CORPORATION, F/K/A VIACOM INC., SUCCESSOR BY MERGER TO CBS CORPORATION, A PENNSYLVANIA CORPORATION, F/K/A WESTINGHOUSE ELECTRIC CORPORATION |
| SB DECKING, INC | f/k/a Selby, Battersby & Company |
| VALVES AND CONTROLS US, INC. | F/K/A WEIR VALVES & CONTROLS USA, INC. F/K/A ATWOOD & MORRILL CO., INC. |
| YORK INTERNATIONAL CORPORATION | INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO CENTRAL ENVIRONMENTAL SYSTEMS, INC., F/K/A BORG-WARNER CENTRAL |

| | |
|---|---|
| | ENVIRONMENTAL SYSTEMS, INC. |

9. For the purposes of the claims alleged herein, the Federal Court lacks subject matter jurisdiction over this Action, as there is no federal question and incomplete diversity of citizenship due to the presence of a California defendant. Removal is improper. Every claim arising under the Constitution, treaties, or law of the United States is expressly disclaimed, including any claim arising from an act or omission by a federal officer on a federal enclave, or of any Officer of the U.S. or any agency or person acting under him occurring under color of such office. No claim of admiralty or maritime law is raised. Plaintiffs sue no foreign state or agency. By this allegation, Plaintiffs are not disclaiming State law claims arising under State, statutory, decisional or common law, nor is Plaintiff disclaiming claims which stem from exposures on Federal enclaves. Plaintiffs are only disclaiming claims which would be directed at the Federal government and/or Federal officers. Venue is proper in the City and County of SAN FRANCISCO. Plaintiffs shall seek sanctions, attorneys' fees, and other appropriate relief in the event any Defendant moves to transfer and/or remove this Action to another court without reasonable period of meet and confer discussion relating to same prior to notice of removal and/or transfer of this Action.

10. Plaintiff JAY W. SANDERS, JR. was a California resident during a substantial period of his asbestos exposure upon which Plaintiffs' claims are based.

11. At all times herein mentioned, the **ASBESTOS DEFENDANTS,** and each of them, were engaged in the business of manufacturing, fabricating, designing, assembling, distributing, leasing, buying, selling, supplying, cleaning, discarding, drilling, inspecting, servicing, repairing, distributing, modifying, handling, installing, mixing, scraping, contracting to install, removing, contracting to remove, disturbing, cutting, grinding, scraping, marketing, warranting, negligently maintaining premises that had on them and/or advertising a certain substance, the generic name of which is asbestos, and/or other products containing said substance, or are engaged in the business of manufacturing, fabricating, designing, assembling, distributing, selling, and marketing of safety equipment, including respiratory protective devices which were intended to block the entry of asbestos fibers into the bodies of workers who were exposed to asbestos in the workplace and other locations.

12. At all times herein mentioned, the **ASBESTOS DEFENDANTS**, and each of them,

singularly and jointly, negligently and carelessly researched, tested or failed to test, warned or failed to warn, failed to maintain safe premises, failed to institute established industrial hygiene measures, negligently hired contractors, manufactured and/or caused to be manufactured, designed, developed, distributed, supplied, removed, abated, tore out, drilled, dug out, threw away, discarded, swept up, labeled, advertised, marketed, warranted, inspected, repaired, installed, scraped, cut, ground, mixed distributed, handled, fabricated, assembled, modified, serviced, and/or sold a certain substance, the generic name of which is asbestos, and/or other products containing said substance, and said substance was capable of causing and did, in fact, proximately cause personal injuries to users, consumers, workers and others, while being used in a manner reasonably foreseeable, thereby rendering said substances unsafe and dangerous for use by the consumers, users, bystanders or workers exposed thereto;

13. At all times herein mentioned, the **ASBESTOS DEFENDANTS**, and each of them manufactured, distributed, sold and/or designed products to be used with asbestos, and/or other products containing said substance. Each **ASBESTOS DEFENDANT** manufactured, distributed, sold and/or designed products in such a manner that it required the regular replacement of asbestos and/or other materials containing asbestos. Moreover, each **ASBESTOS DEFENDANT** defectively designed, sold, manufactured and/or distributed products which caused the degradation of integrated asbestos-containing products, which contributed to plaintiffs' development of asbestos disease. This being so, even despite the fact that alternative feasible designs were available that would not cause degradation and release of asbestos fibers from the original and replacements asbestos materials to the same extent as the design chosen by **ASBESTOS DEFENDANTS**.

14. It was foreseeable to each and every **ASBESTOS DEFENDANT** that the original asbestos and other materials containing asbestos would be removed and replaced with new asbestos and/or other materials containing asbestos during ordinary operation and maintenance. Indeed, during the time period in question, most if not all, replacement materials were comprised of asbestos. The operation, use and repair of each of the **ASBESTOS DEFENDANTS** products would affect both the original and replacement asbestos and other products containing asbestos by making them brittle, friable and not reusable. It was foreseeable to each **ASBESTOS**

**DEFENDANT** that the process of removing asbestos materials incorporated into their products and replacing them with new asbestos materials during ordinary repair and maintenance would disturb asbestos and result in the release of asbestos fibers into the air, thereby exposing Plaintiff, other workers and bystanders. Each **ASBESTOS DEFENDANT** failed to warn Plaintiff, other workers and bystanders of the risks inherent in the replacement of asbestos containing parts and failed to warn Plaintiff, other workers and bystanders that their product was designed to make asbestos friable.

15. Plaintiff herein is a worker who for or during a substantial length of time used, handled, was present or has been otherwise exposed to the asbestos and asbestos products referred to herein in a manner that was reasonably foreseeable.

16. As a direct and proximate result of the conduct of the **ASBESTOS DEFENDANTS**, and each of them, as aforesaid, the exposure to asbestos caused severe and permanent injuries to the plaintiff, including, but not limited to, mesothelioma and, severe shock to his nervous system and other injuries, the exact extent of which are unknown to plaintiff.

17. Plaintiff is informed and believes, and thereon alleges, that mesothelioma is a progressive lung disease caused by inhalation of asbestos fibers without perceptible trauma and that said disease results from exposure to asbestos and asbestos products over a period of time.

18. Plaintiff was not aware that exposure to asbestos presented any risk of injury and/or disease to him and had not been advised or informed by anyone that he could contract any disease, sickness or injury as a result of working in the vicinity of asbestos or otherwise as a bystander.

19. As a direct and proximate result of the aforesaid conduct of **ASBESTOS DEFENDANTS**, and each of them, plaintiff is dying and has suffered, and continues to suffer permanent injuries to his person, body and health, including but not limited to mesothelioma and other lung damage, all to his general damages in a sum invoking the unlimited jurisdiction of the Court.

20. As a direct and proximate result of the aforesaid conduct of the **ASBESTOS DEFENDANTS**, and each of them, plaintiff experienced and continues to experience prolonged pain and suffering and is presently incurring and will incur in the future, liability for physicians, surgeons, nurses, hospital care, medicine, hospitals, x-rays and other medical treatment, the true

and exact amount thereof being unknown to plaintiff at this time, and plaintiff prays leave to amend this Complaint accordingly when the true and exact cost thereof is ascertained.

21. Plaintiff JAY W. SANDERS, JR. has lost pre-judgment interest pursuant to Civil Code Section 3288, the exact amount of which plaintiff prays leave to insert herein when finally ascertained.

22. By reason of the aforesaid negligence of **ASBESTOS DEFENDANTS**, and each of them, plaintiff has suffered damages to his health, strength and activity in an amount that is presently unknown to plaintiff and plaintiff prays leave to amend this Complaint accordingly when the true and exact cost thereof is ascertained.

23. In researching, testing, manufacturing, distributing, labeling, and marketing said products, **ASBESTOS DEFENDANTS** in this cause of action named, and each of them, did so with conscious disregard for the safety of the users of said products, in that **ASBESTOS DEFENDANTS** had specific prior knowledge that there was a high risk of injury or death resulting from exposure to asbestos or asbestos products, including but not limited to asbestosis, pleural scarring, lung cancer and mesothelioma. Said knowledge was obtained, in part, from scientific studies, government data, and medical data to which **ASBESTOS DEFENDANTS** had access, as well as scientific studies performed by, at the request of, or with the assistance of, said **ASBESTOS DEFENDANTS**, and which knowledge was obtained by said **ASBESTOS DEFENDANTS** on or before 1933, and thereafter.

24. On or before 1933, and thereafter, said **ASBESTOS DEFENDANTS** were aware that users of asbestos and asbestos products, as well as members of the general public who would be exposed to asbestos and asbestos products, had no knowledge or information indicating that asbestos could cause injury, and said **ASBESTOS DEFENDANTS** knew that the users of asbestos and asbestos products, as well as members of the general public who were exposed to asbestos and asbestos products, would assume, and in fact did assume, that exposure to asbestos and asbestos products was safe, when in fact said exposure was extremely hazardous to human life.

25. With said knowledge, said **ASBESTOS DEFENDANTS** opted to manufacture and distribute said asbestos and asbestos products without attempting to protect users from or warn users of, the high risk of injury or death resulting from exposure to asbestos and asbestos products.

Rather than attempting to protect users and workers from, or warn workers and users of, the high risk of injury or death resulting from exposure to asbestos and asbestos products, **ASBESTOS DEFENDANTS** intentionally failed to reveal their knowledge of said risk, fraudulently, consciously and actively concealed and suppressed said knowledge from members of the general public that asbestos and asbestos products were unsafe for all reasonably foreseeable use, with the knowledge of the falsity of said implied representations.

26. The above referenced conduct of said **ASBESTOS DEFENDANTS** was motivated by the financial interest of said **ASBESTOS DEFENDANTS** in the continuing, uninterrupted design, distribution and marketing of asbestos and asbestos products. In pursuance of said financial motivation, said **ASBESTOS DEFENDANTS** consciously disregarded the safety of the users of, and persons exposed to, asbestos and asbestos products, and were in fact, consciously willing to permit asbestos and asbestos products to cause injury to workers and users thereof, and persons exposed thereto, including plaintiff.

27. The above referenced conduct of said **DEFENDANTS,** their alternate entities, and each of them, and their officers, directors and managing agents participated in, authorized, expressly or impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein.

28. As the above referenced conduct of said **ASBESTOS DEFENDANTS** was and is vile, base, willful, malicious, fraudulent, oppressive, outrageous, and in conscious disregard and indifference to the safety and health of workers exposed to asbestos and asbestos products, including plaintiff, plaintiff, for the sake of example, and by way of punishing said **ASBESTOS DEFENDANTS**, seeks punitive damages according to proof.

WHEREFORE, plaintiff prays judgment against **ASBESTOS DEFENDANTS**, and each of them, as hereafter set forth.

## SECOND CAUSE OF ACTION - STRICT LIABILITY

AS AND FOR A SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR STRICT LIABILITY, PLAINTIFFS COMPLAINS OF THE **ASBESTOS DEFENDANTS,** AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

29. Plaintiffs re-allege and incorporate herein by reference each of the proceeding paragraphs of this Complaint.

30. **ASBESTOS DEFENDANTS** and each of them, researched, manufactured, tested or failed to test, warned or failed to warn, designed, labeled, distributed, advertised, marketed, warranted, distributed, handled, installed, modified, scraped, inspected, abated, supplied, discarded, cleaned up, repaired, removed, offered for sale, sold, distributed and/or designed a certain substance, the generic name of which is asbestos and other products containing said substance, which substance is defective, in that same was capable of causing and did, in fact, cause personal injuries, including asbestosis, pleural scarring, lung cancer, mesothelioma and other lung damage, to the users and consumers thereof while being used in a reasonably foreseeable manner, thereby rendering the same unsafe and dangerous for use by consumers, users, bystanders and workers exposed thereto and not performing as safely as an ordinary consumer would have expected; said **ASBESTOS DEFENDANTS**, and each of them, further failed to adequately warn of the risks to which plaintiff and others similarly situated were exposed.

31. At all times mentioned herein, plaintiffs reasonably were unaware of the dangerous nature of the aforementioned products.

32. As a direct and proximate result thereof, plaintiffs have suffered the injuries and damages as previously set forth including those alleged in the First Cause of Action, inclusive.

33. In researching, testing, manufacturing, distributing, labeling, and marketing asbestos and asbestos products, Plaintiffs are informed and believe that Defendants, and each of them, did so with conscious disregard for the safety of the users of said asbestos and asbestos products, in that Defendants had specific prior knowledge that there was a high risk of injury or death resulting from exposure to asbestos or asbestos products, including but not limited to, asbestos-related disease. Said knowledge was obtained, in part, from scientific studies, government data, and medical data to which Defendants had access, as well as scientific studies performed by, at the request of, or with the assistance of, said Defendants, and which knowledge was obtained by said Defendants on or before 1933, and thereafter.

34. On or before 1933, and thereafter, said Defendants were aware that users of asbestos and asbestos products, as well as members of the general public who would be exposed to asbestos and

asbestos products, had no knowledge or information indicating that asbestos could cause injury, and said Defendants knew that the users of asbestos and asbestos products, as well as members of the general public who were exposed to asbestos and asbestos products, would assume, and in fact did assume, that exposure to asbestos and asbestos products was safe, when in fact said exposure was extremely hazardous to human life.

35. With said knowledge, said Defendants opted to manufacture, distribute and/or use said asbestos and asbestos products without attempting to protect users and workers from, or warn workers and users of, the high risk of injury or death resulting from exposure to asbestos and asbestos products. Rather than attempting to protect users and workers from, or warn workers and users of, the high risk of injury or death resulting from exposure to asbestos and asbestos products, Defendants intentionally failed to reveal their knowledge of said risk, and consciously and actively concealed and suppressed said knowledge from members of the general public that asbestos and asbestos products were unsafe for all reasonably foreseeable use, with the knowledge of the falsity of said implied representations.

36. The above-referenced conduct of said Defendants was motivated by the financial interest of said Defendants in the continuing, uninterrupted distribution and marketing of asbestos and asbestos products. In pursuance of said financial motivation, said Defendants consciously disregarded the safety of the users of, and persons exposed to, asbestos and asbestos products, and were in fact, consciously willing to permit asbestos and asbestos products to cause injury to workers and users thereof, and personally exposed thereto, including plaintiff.

37. The above referenced conduct of said **DEFENDANTS,** their alternate entities, and each of them, and their officers, directors and managing agents participated in, authorized, expressly or impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein.

38. As the above-referenced conduct of said Defendants was and is willful, malicious, outrageous, and in conscious disregard and indifferent to the safety and health of workers exposed to asbestos and asbestos products, including Plaintiff, for the sake of example, and by way of punishing said Defendants, Plaintiffs seek punitive damages according to proof.

**<u>THIRD CAUSE OF ACTION - FALSE REPRESENTATION UNDER RESTATEMENT</u>**

**OF TORTS SECTION 402-B**

AS AND FOR A THIRD, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR STRICT LIABILITY, PLAINTIFF COMPLAINS OF THE **DEFENDANTS** AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

39. Plaintiffs re-allege and incorporate herein by reference each of the proceeding paragraphs of this Complaint.

40. At the aforementioned time when Defendants, their "Alternate Entities," and each of them, researched, manufactured, fabricated, designed, modified, tested or failed to test, inadequately warned or failed to warn, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, rebranded, manufactured for others, packaged and advertised the said asbestos and asbestos-containing products, as herein above set forth, the Defendants, their "Alternate Entities," and each of them, expressly and impliedly represented to members of the general public, including the purchasers and users of said product, and other "exposed persons," including the Plaintiff herein and his employers, that asbestos and asbestos-containing products, were of merchantable quality, and safe for the use for which they were intended.

41. The purchasers and users of said asbestos and asbestos-containing products, and other "exposed persons," including the Plaintiff and his employers, relied upon said representations of Defendants, their "Alternate Entities," and each of them, in the selection, purchase and use of asbestos and asbestos-containing products.

42. Said representations by Defendants, their "Alternate Entities," and each of them, were false and untrue, and Defendants knew at the time they were untrue, in that the asbestos and asbestos-containing products were not safe for their intended use, nor were they of merchantable quality as represented by Defendants, their "Alternate Entities," and each of them, in that asbestos and asbestos-containing products have very dangerous properties and defects whereby said products cause asbestosis, other lung damages and cancer, and have other defects that cause injury and damage to the users of said products and other "exposed persons," thereby threatening the health and life of said persons including Plaintiff herein.

43. As a direct and proximate result of said false representations by Defendants, their "Alternate Entities," and each of them, the Plaintiff sustained the injuries and damages herein

above set forth.

44. The above-referenced conduct of said Defendant was and is willful, malicious, outrageous and/or in conscious disregard and indifference to the safety of users of said asbestos and asbestos products, including Plaintiff. Defendant is guilty of oppression, fraud, or malice and engaged in conduct which was intended by the defendant to cause injury to the plaintiff or conduct which was carried on by the defendant with a conscious disregard of the rights or safety of others. Defendant subjected Plaintiff to cruel and unjust hardship in conscious disregard of her rights and engaged in intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving Plaintiff of property or legal rights or otherwise causing injury. Plaintiff therefore, for the sake of example and by way of punishing Defendant, seeks damages according to proof.

## FOURTH CAUSE OF ACTION – PREMISES LIABILITY

AS FOR A FOURTH, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR STRICT LIABILITY, PLAINTIFFS COMPLAINS OF THE **PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS** and TWO HUNDRED-FIFTY FIRST DOE THROUGH THREE HUNDREDTH DOE AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

45. Plaintiffs re-allege and incorporate herein by reference each of the proceeding paragraphs of this Complaint.

46. At all times mentioned herein, the Premises Owner/Contractor Liability Defendants (listed on Exhibit A), and each of them, respectively, owned, leased, maintained, managed, and/or controlled the premises listed where Plaintiff was present. The information provided is preliminary, based on recall over events covering many years and further investigation and discovery may produce more reliable information. Additionally, Plaintiff might have been present at these or other Premises Owner/Contractor Liability Defendants (listed on Exhibit A)' premises at other locations and on other occasions.

47. Prior to and at said times and places, said Premises Owner/Contractor Liability Defendants (listed on Exhibit A), and each of them, respectively, caused certain asbestos-containing insulation, other building materials, products and toxic substances to be constructed, installed, maintained, used, supplied, replaced, repaired and/or removed on each of the aforesaid

respective premises, by their own workers and/or by various contractors, and caused the release of dangerous quantities of toxic asbestos fibers and other toxic substances into the ambient air and thereby created a hazardous and unsafe condition to Plaintiff and other persons exposed to said asbestos fibers and toxic substances while present at said premises.

48. At all times mentioned herein, said Premises Owner/Contractor Liability Defendants (listed on Exhibit A), and each of them, knew or in the exercise of ordinary and reasonable care should have known, that the foregoing conditions and activities created a dangerous, hazardous, and unsafe condition and unreasonable risk of harm and personal injury to Plaintiff and other workers or persons so exposed present on each of the aforesaid respective premises.

49. At all times relevant herein, Plaintiff entered said premises and used or occupied each of said respective premises as intended and for each of the respective Premises Owner/Contractor Liability Defendants (listed on Exhibit A)' request and invitation. In so doing, Plaintiff was exposed to dangerous quantities of asbestos fibers and other toxic substances released into the ambient air by the aforesaid hazardous conditions and activities managed, maintained, initiated, and/or otherwise created, controlled, or caused by said Premises Owner/Contractor Liability Defendants (listed on Exhibit A), and each of them.

50. Plaintiff at all times was unaware of the hazardous condition or the risk of personal injury created by the aforesaid presence and use of asbestos products and materials and other toxic substances on said premises.

51. At all times mentioned herein, said Premises Owner/Contractor Liability Defendants (listed on Exhibit A), and each of them, remained in control of the premises where Plaintiff was performing his work.

52. At all times mentioned herein, the Premises Owner/Contractor Liability Defendants (listed on Exhibit A), owed to Plaintiffs and others similarly situated a duty to exercise ordinary care in the management of such premises in order to avoid exposing workers such as Plaintiff to an unreasonable risk of harm and to avoid causing injury to said person.

53. At all times mentioned herein, said Premises Owner/Contractor Liability Defendants (listed on Exhibit A), and each of them, negligently failed to maintain, manage, inspect, survey, or control said premises or to abate or correct, or to warn Plaintiff of, the existence of the aforesaid

dangerous conditions and hazards on said premises.

54. Prior to and at the times and places aforesaid, said Premises Owner/Contractor Liability Defendants (listed on Exhibit A), and each of them, respectively, caused certain asbestos-containing insulation, other building materials, products and toxic substances to be constructed, installed, maintained, used, replaced, repaired and/or removed on each of their aforesaid respective premises, by their own workers and/or by employing various contractors, and caused the release of dangerous quantities of toxic asbestos fibers and other toxic substances into the ambient air and thereby injured Plaintiff.

55. At all times mentioned herein, said Premises Owner/Contractor Liability Defendants (listed on Exhibit A), and each of them, should have recognized that the work of said contractors would create during the progress of the work, dangerous, hazardous, and unsafe conditions which could or would harm Plaintiff and others unless special precautions were taken.

56. In part, Plaintiff was exposed to dangerous quantities of asbestos fibers and other toxic substances by reason of such contractors' failure to take necessary precautions.

57. The work of contractors on premises controlled by the Premises Owner/Contractor Defendants created an unsafe premise and an unsafe work place by reason of the release of dangerous quantities of toxic substances including but not limited to asbestos.

58. The unsafe premise or work place was created, in part, by the negligent conduct of the contractors employed by the Premises Owner/Contractor Defendants. Said negligent conduct includes but is not limited to:

a. Failure to warn of asbestos and other toxic dusts;

b. Failure to suppress the asbestos-containing or toxic dusts;

c. Failure to remove the asbestos-containing and toxic dust through the use of ventilation or appropriate means;

d. Failure to provide adequate breathing protection, i.e., approved respirators or masks;

e. Failure to inspect and/or test the air;

f. Failure to provide medical monitoring.

59. The Premises Owner/Contractor Defendants' duty to maintain and provide safe premises,

a safe place to work, and to warn of dangerous conditions are non-delegable; said duties arise out of common law, Civil Code §1708, and Labor Code §6400, et seq., or Health & Safety Code §40200, et seq., and regulations promulgated thereunder. Therefore, the Premises Owner/Contractor Defendants are responsible for any breach of said duties whether by themselves or others.

60. Prior to and at said times and places, said Premises Owner/Contractor Liability Defendants (listed on Exhibit A) were subject to certain ordinances, statutes, and other government regulations promulgated by the United States Government, the State of California, and others, including but not limited to the General Industry Safety Orders promulgated pursuant to California Labor Code §6400 and the California Administrative Code under the Division of Industrial Safety, Department of Industrial Relations, including but not limited to Title VIII, Group 9 (Control of Hazardous Substances), Article 81, §§4105, 4106, 4107 and 4108, and Threshold Limit Values as documented for asbestos and other toxic substances under Appendix A, Table 1 of said Safety Orders; additionally, California Health & Safety Code §40200, et seq., which empowers the California Air Quality Management Districts to promulgate regulations covering emission standards for hazardous air pollutants. Such state and federal standards required said Premises Owner/Contractor Liability Defendants (listed on Exhibit A) to provide specific safeguards or precautions to prevent or reduce the inhalation of asbestos dust and other toxic fumes or substances; and said Premises Owner/Contractor Liability Defendants (listed on Exhibit A) failed to provide the required safeguards and precautions. Defendants' violations of said codes include but are not limited to:

a. Failing to comply with statutes and allowing ambient levels of airborne asbestos fiber to exceed the permissible/allowable levels with regard to the aforementioned statutes;

b. Failing to segregate work involving the release of asbestos or other toxic dusts;

c. Failing to suppress dust using prescribed ventilation techniques;

d. Failing to suppress dust using prescribed "wet down" techniques;

e. Failing to warn or educate Plaintiff or others regarding asbestos or other toxic substances on the premises;

f. Failing to provide approved respiratory protection devices

g. Failing to ensure "approved" respiratory protection devices were used properly;

h. Failing to provide for an on-going health and screening program for those exposed to asbestos on the premises;

i. Failing to provide adequate housekeeping and clean-up of the work place;

j. Failing to properly warn of the hazards associated with asbestos as required by statute;

k. Failing to properly report renovation and disturbance of asbestos-containing materials;

l. Failing to have an asbestos removal supervisor as required by regulation;

m. Failing to get approval for renovation as required by statutes; and

n. Failing to maintain records as required by statute.

61. Premises Owner/Contractor Liability Defendants (listed on Exhibit A), and each of them, were the "statutory employer" of Plaintiff as defined by the California Labor Code and California case law.

62. Plaintiff at all times was unaware of the hazardous condition or the risk of personal injury created by Defendants' violation of said regulations, ordinances or statutes.

63. At all times mentioned herein, Plaintiff was a member of the class of persons whose safety was intended to be protected by the regulations, statutes or ordinances described in the foregoing paragraphs.

64. At all times mentioned herein, said Premises Owner/Contractor Liability Defendants (listed on Exhibit A), and each of them, knew, or in the exercise of ordinary and reasonable care should have known, that the premises that were in their control would be used without knowledge of, or inspection for, defects or dangerous conditions, that the persons present and using said premises would not be aware of the aforesaid hazardous conditions to which they were exposed on the premises, and that such persons were unaware of the aforesaid violations of codes, regulations and statutes.

65. As a legal consequence of the foregoing, Plaintiff developed an asbestos-related illness - mesothelioma, which has caused great injury and disability as previously set forth, and Plaintiff

has suffered damages as herein alleged. The above-referenced conduct of said Defendant was and is willful, malicious, outrageous and/or in conscious disregard and indifference to the safety of users of said asbestos and asbestos products, including Plaintiff. Defendant is guilty of oppression, fraud, or malice and engaged in conduct which was intended by the defendant to cause injury to the plaintiff or conduct which was carried on by the defendant with a conscious disregard of the rights or safety of others. Defendant subjected Plaintiff to cruel and unjust hardship in conscious disregard of his rights and engaged in intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving Plaintiff of property or legal rights or otherwise causing injury. Plaintiff therefore, for the sake of example and by way of punishing Defendant, seeks punitive damages, according to proof.

**FIFTH CAUSE OF ACTION - LOSS OF CONSORTIUM**

AS AND FOR A FURTHER, FIFTH SEPARATE AND DISTINCT CAUSE OF ACTION FOR LOSS OF CONSORTIUM, PLAINTIFF JUDY M. SANDERS COMPLAINS OF **ASBESTOS DEFENDANTS,** AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

66. Plaintiff JUDY M. SANDERS incorporates herein by reference and makes a part hereof as though fully set forth herein, all the preceding paragraphs of this Complaint.

67. Plaintiff JUDY M. SANDERS is now, and at times herein mentioned, the lawfully wedded spouse of JAY W. SANDERS, JR..

68. As a direct and proximate result of the acts of **ASBESTOS DEFENDANTS**, and each of them, as set forth and incorporated herein by reference, and the severe injuries caused thereby to JAY W. SANDERS, JR., as alleged in his Complaint, plaintiff JUDY M. SANDERS has suffered, and for a long period of time will continue to suffer loss of consortium, including but not by way of limitation, loss of services, marital relations, society, comfort, companionship, love and affection of her said spouse, and has suffered severe mental and emotional distress and general nervousness as a result thereof.

69. Plaintiff JUDY M. SANDERS as a result of the foregoing described injuries to her Spouse, JAY W. SANDERS, JR., has been generally damaged in a sum in excess of the jurisdictional limits of the Municipal Court.

WHEREFORE, plaintiff prays judgment against **ASBESTOS DEFENDANTS**, and each of them, as hereafter set forth.

## DAMAGES

WHEREFORE, Plaintiffs pray judgment against Defendants, and each of them, for each of the causes of action set forth above, as follows:

1. For plaintiffs' general damages according to proof;
2. For plaintiff JAY W. SANDERS, JR.'s medical and related expenses; according to proof;
3. For plaintiffs' prejudgment interest according to proof, pursuant to Civil Code section 3288;
4. For loss of income, wages and earning potential according to proof;
5. For plaintiffs' costs of suit herein;
6. For loss of care, comfort and society;
7. For exemplary or punitive damages according to proof; and
8. For such other and further relief as this Court deems just and proper.

DATED: August 18, 2023

**GOLD LAW FIRM**

By: [signature]

ROGER E. GOLD
Attorney for Plaintiffs

# "EXHIBIT A" TO THE COMPLAINT

J.T. THORPE & SON, INC.

**ELECTRONICALLY FILED**
Superior Court of California,
County of Alameda
**04/29/2024 at 05:32:56 PM**
By: Damaree Franklin,
Deputy Clerk

ROGER E. GOLD (State Bar No. 214802)
rgold@rgoldlegal.com
CECIL B. CRAIN (State Bar No. 252780)
ccrain@rgoldlegal.com
MIA MATTIS (State Bar No. 191027)
mmattis@rgoldlegal.com
GOLD LAW FIRM
591 Redwood Highway, Bldg. 4000
Mill Valley, CA 94941
Tel: (415) 869-6990
Fax (415) 373-4579

Attorneys for Plaintiffs
JAY W. SANDERS, JR. et al.

**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF ALAMEDA**

(UNLIMITED JURISDICTION)

| | |
|---|---|
| JAY W. SANDERS, JR., and JUDY M. SANDERS<br><br>Plaintiffs,<br><br>VS.<br><br>3M COMPANY, et al.,<br><br>Defendants. | No. 23CV041073<br><br>**AMENDMENT TO COMPLAINT TO SUBSTITUTE DEFENDANT'S TRUE NAME FOR DOES NO. 4, 5, 6, 7, 8, 9, 10, 11, 12, 13.**<br><br>[C.C.P. 474] |

## GENERAL ALLEGATIONS

Plaintiffs amend the complaint in this action as follows:

Plaintiffs have learned the true name of the defendant designated in the complaint as fictitious DOE as set forth below:

| TRUE NAME | FICTITIOUS NAME |
|---|---|
| AIR & LIQUID SYSTEMS CORPORATION, BUFFALO PUMPS DIVISION | DOE 4 |
| BLACKMER PUMP COMPANY | DOE 5 |
| ELECTROLUX HOME PRODUCTS, INC. SII COPES-VULCAN | DOE 6 |
| FLOWSERVE US INC., SOLELY AS SUCCESSOR TO EDWARD VALVES INC. | DOE 7 |
| FOSTER WHEELER ENERGY CORPORATION | DOE 8 |
| GRINNELL LLC | DOE 9 |
| ITT LLC | DOE 10 |
| REDCO CORPORATION, FKA CRANE CO. | DOE 11 |
| STERLING FLUID SYSTEMS USA, LLC FKA PEERLESS PUMPS | DOE 12 |
| WARREN PUMPS, LLC | DOE 13 |

Plaintiffs hereby substitute such true name for the fictitious name as set forth above wherever said name appears in the complaint.

DATED: April 29, 2024

**GOLD LAW FIRM**

By: ______________________
ROGER E. GOLD
Attorney for Plaintiffs

## PROOF OF SERVICE

I certify that I am over the age of 18 years and not a party to the within action; that my business address is 591 Redwood Highway, Ste 4000, Mill Valley, CA 94941; and that on this date I served a true copy of the document(s) in the action of *Jay W. Sanders, Jr., et al. v 3M Company, et al,* Alameda County Superior Court, Case No. 23CV041073, entitled:

**AMENDMENT TO COMPLAINT TO SUBSTITUTE DEFENDANTS' TRUE NAME FOR DOES 4 THROUGH 13**

on the following parties via the following methods of service:

**ALL COUNSEL OF RECORD**

X **Electronically** on the recipients designated on the Transaction Receipt listed on the Lexis Nexis File & Serve website, pursuant to Alameda Superior Court Notice of Entry of Stipulation and Order Authorizing Electronic Service on March 12, 2019.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this Proof of Service was executed on April 29, 2024, at Mill Valley, California.

[signature]

Karlyn Swan

CM-010

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:
Roger E. Gold (SBN 214802)
Gold Law Firm; 591 Redwood Highway, Bldg. 4000, Mill Valley, CA 94941
TELEPHONE NO.: (415) 869-6990 FAX NO. *(Optional)*: (415) 373-4579
E-MAIL ADDRESS:
ATTORNEY FOR *(Name)*:

FOR COURT USE ONLY

**ELECTRONICALLY FILED**
Superior Court of California,
County of Alameda
**08/18/2023 at 07:36:48 PM**
By: Chan Huang,
Deputy Clerk

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
STREET ADDRESS: 1225 Fallon Street
MAILING ADDRESS:
CITY AND ZIP CODE: Oakland, CA 94612
BRANCH NAME: Unlimited

CASE NAME:
JAY W. SANDERS, JR. and JUDY M. SANDERS v. 3M COMPANY, et al.

## CIVIL CASE COVER SHEET

[X] **Unlimited** (Amount demanded exceeds $25,000)
[ ] **Limited** (Amount demanded is $25,000 or less)

**Complex Case Designation**
[ ] Counter [ ] Joinder
Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402)

CASE NUMBER: 23CV041073
JUDGE:
DEPT:

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[X] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [X] is [ ] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [X] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply)*: a. [X] monetary b. [ ] nonmonetary; declaratory or injunctive relief c. [X] punitive
4. Number of causes of action *(specify)*: 5
5. This case [ ] is [X] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: August 18, 2023
Roger E. Gold
(TYPE OR PRINT NAME)

▶ [signature]
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.



Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev September 1, 2021]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courts.ca.gov

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET



**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
- Auto (22)–Personal Injury/Property Damage/Wrongful Death
- Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
- Asbestos (04)
  - Asbestos Property Damage
  - Asbestos Personal Injury/ Wrongful Death
- Product Liability *(not asbestos or toxic/environmental)* (24)
- Medical Malpractice (45)
  - Medical Malpractice– Physicians & Surgeons
- Other Professional Health Care Malpractice
- Other PI/PD/WD (23)
  - Premises Liability (e.g., slip and fall)
  - Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  - Intentional Infliction of Emotional Distress
  - Negligent Infliction of Emotional Distress
  - Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
- Business Tort/Unfair Business Practice (07)
- Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
- Defamation (e.g., slander, libel) (13)
- Fraud (16)
- Intellectual Property (19)
- Professional Negligence (25)
  - Legal Malpractice
  - Other Professional Malpractice *(not medical or legal)*
- Other Non-PI/PD/WD Tort (35)

**Employment**
- Wrongful Termination (36)
- Other Employment (15)

**Contract**
- Breach of Contract/Warranty (06)
  - Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  - Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  - Negligent Breach of Contract/ Warranty
  - Other Breach of Contract/Warranty
- Collections (e.g., money owed, open book accounts) (09)
  - Collection Case–Seller Plaintiff
  - Other Promissory Note/Collections Case
- Insurance Coverage *(not provisionally complex)* (18)
  - Auto Subrogation
  - Other Coverage
- Other Contract (37)
  - Contractual Fraud
  - Other Contract Dispute

**Real Property**
- Eminent Domain/Inverse Condemnation (14)
- Wrongful Eviction (33)
- Other Real Property (e.g., quiet title) (26)
  - Writ of Possession of Real Property
  - Mortgage Foreclosure
  - Quiet Title
  - Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
- Commercial (31)
- Residential (32)
- Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
- Asset Forfeiture (05)
- Petition Re: Arbitration Award (11)
- Writ of Mandate (02)
  - Writ–Administrative Mandamus
  - Writ–Mandamus on Limited Court Case Matter
  - Writ–Other Limited Court Case Review
- Other Judicial Review (39)
  - Review of Health Officer Order
  - Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
- Antitrust/Trade Regulation (03)
- Construction Defect (10)
- Claims Involving Mass Tort (40)
- Securities Litigation (28)
- Environmental/Toxic Tort (30)
- Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
- Enforcement of Judgment (20)
  - Abstract of Judgment (Out of County)
- Confession of Judgment *(non-domestic relations)*
- Sister State Judgment
- Administrative Agency Award *(not unpaid taxes)*
- Petition/Certification of Entry of Judgment on Unpaid Taxes
- Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
- RICO (27)
- Other Complaint *(not specified above)* (42)
  - Declaratory Relief Only
  - Injunctive Relief Only *(non-harassment)*
  - Mechanics Lien
  - Other Commercial Complaint Case *(non-tort/non-complex)*
  - Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
- Partnership and Corporate Governance (21)
- Other Petition *(not specified above)* (43)
  - Civil Harassment
  - Workplace Violence
  - Elder/Dependent Adult Abuse
  - Election Contest
  - Petition for Name Change
  - Petition for Relief From Late Claim
  - Other Civil Petition

# Superior Court of California, County of Alameda
## Alternative Dispute Resolution (ADR) Information Packet

The person who files a civil lawsuit (plaintiff) must include the ADR Information Packet with the complaint when serving the defendant. Cross complainants must serve the ADR Information Packet on any new parties named to the action.

The Court *strongly encourages* the parties to use some form of ADR before proceeding to trial. You may choose ADR by:

- Indicating your preference on Case Management Form CM-110;
- Filing the Stipulation to ADR and Delay Initial Case Management Conference for 90 Days (a local form included with the information packet); or
- Agreeing to ADR at your Initial Case Management Conference.

**QUESTIONS?** Call (510) 891-6055. Email: adrprogram@alameda.courts.ca.gov
Or visit the court's website at http://www.alameda.courts.ca.gov/divisions/civil/adr

### What Are the Advantages of Using ADR?

- ***Faster*** –Litigation can take years to complete but ADR usually takes weeks or months.
- ***Cheaper*** – Parties can save on attorneys' fees and litigation costs.
- ***More control and flexibility*** – Parties choose the ADR process appropriate for their case.
- ***Cooperative and less stressful*** – In mediation, parties cooperate to find a mutually agreeable resolution.
- ***Preserve Relationships*** – A mediator can help you effectively communicate your interests and point of view to the other side. This is an important benefit when you want to preserve a relationship.

### What Is the Disadvantage of Using ADR?

- ***You may go to court anyway*** – If you cannot resolve your dispute using ADR, you may still have to spend time and money resolving your lawsuit through the courts.

### What ADR Options Are Available?

- ***Mediation*** – A neutral person (mediator) helps the parties communicate, clarify facts, identify legal issues, explore settlement options, and agree on a solution that is acceptable to all sides.
  - **Court Mediation Program**: Mediators do not charge fees for the first two hours of mediation. If parties need more time, they must pay the mediator's regular fees.

Some mediators ask for a deposit before mediation starts which is subject to a refund for unused time.

- **Private Mediation**: This is mediation where the parties pay the mediator's regular fees and may choose a mediator outside the court's panel.

- ***Arbitration*** – A neutral person (arbitrator) hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is less formal than a trial and the rules of evidence are often relaxed. Arbitration is effective when the parties want someone other than themselves to decide the outcome.

  - **Judicial Arbitration Program** (non-binding): The judge can refer a case, or the parties can agree to use judicial arbitration. The parties select an arbitrator from a list provided by the court. If the parties cannot agree on an arbitrator, one will be assigned by the court. There is no fee for the arbitrator. The arbitrator must send the decision (award of the arbitrator) to the court. The parties have the right to reject the award and proceed to trial.

  - **Private Arbitration** (binding and non-binding) occurs when parties involved in a dispute either agree or are contractually obligated. This option takes place outside of the courts and is normally binding meaning the arbitrator's decision is final.

**Mediation Service Programs in Alameda County**

Low-cost mediation services are available through non-profit community organizations. Trained volunteer mediators provide these services. Contact the following organizations for more information:

**SEEDS Community Resolution Center**
2530 San Pablo Avenue, Suite A, Berkeley, CA 94702-1612
Telephone: (510) 548-2377 Website: www.seedscrc.org
Their mission is to provide mediation, facilitation, training and education programs in our diverse communities – **S**ervices that **E**ncourage **E**ffective **D**ialogue and **S**olution-making.

**Center for Community Dispute Settlement**
291 McLeod Street, Livermore, CA 94550
Telephones: (925) 337-7175 | (925) 337-2915 (Spanish)
Website: www.trivalleymediation.com
CCDS provides services in the Tri-Valley area for all of Alameda County.

*For Victim/Offender Restorative Justice Services*
**Catholic Charities of the East Bay: Oakland**
433 Jefferson Street, Oakland, CA 94607 Telephone: (510) 768-3100 Website: www.cceb.org Mediation sessions involve the youth, victim, and family members work toward a mutually agreeable restitution agreement.

ALA ADR-001

| ATTORNEY OR PARTY WITHOUT ATTORNEY (*Name, State Bar number, and address*) | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.: FAX NO. (*Optional*): | |
| E-MAIL ADDRESS (*Optional*): | |
| ATTORNEY FOR (*Name*): | |
| **SUPERIOR COURT OF CALIFORNIA, ALAMEDA COUNTY** | |
| STREET ADDRESS: | |
| MAILING ADDRESS: | |
| CITY AND ZIP CODE: | |
| BRANCH NAME | |
| PLAINTIFF/PETITIONER: | |
| DEFENDANT/RESPONDENT: | |
| **STIPULATION TO ATTEND ALTERNATIVE DISPUTE RESOLUTION (ADR) AND DELAY INITIAL CASE MANAGEMENT CONFERENCE FOR 90 DAYS** | CASE NUMBER: |

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

This stipulation is effective when:

- All parties have signed and filed this stipulation with the Case Management Conference Statement at least 15 days before the initial case management conference.
- A copy of this stipulation has been received by the ADR Program Administrator, 24405 Amador Street, Hayward, CA 94544 or Fax to (510) 267-5727.

1. Date complaint filed: ______________________. An **Initial Case Management Conference** is scheduled for:

   Date: Time: Department:

2. Counsel and all parties certify they have met and conferred and have selected the following ADR process (*check one*):

   ☐ Court mediation ☐ Judicial arbitration
   ☐ Private mediation ☐ Private arbitration

3. All parties agree to complete ADR within 90 days and certify that:

   a. No party to the case has requested a complex civil litigation determination hearing;
   b. All parties have been served and intend to submit to the jurisdiction of the court;
   c. All parties have agreed to a specific plan for sufficient discovery to make the ADR process meaningful;
   d. Copies of this stipulation and self-addressed stamped envelopes are provided for returning endorsed filed stamped copies to counsel and all parties;
   e. Case management statements are submitted with this stipulation;
   f. All parties will attend ADR conferences; and,
   g. The court will not allow more than 90 days to complete ADR.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

______________________________ ▶ ______________________________

(TYPE OR PRINT NAME) (SIGNATURE OF PLAINTIFF)

Date:

______________________________ ▶ ______________________________



Form Approved for Mandatory Use
Superior Court of California,
County of Alameda
ALA ADR-001 [New January 1, 2010]

**STIPULATION TO ATTEND ALTERNATIVE DISPUTE RESOLUTION (ADR) AND DELAY INITIAL CASE MANAGEMENT CONFERENCE FOR 90 DAYS**

Cal. Rules of Court, rule 3.221(a)(4)

(TYPE OR PRINT NAME) (SIGNATURE OF ATTORNEY FOR PLAINTIFF)

ALA ADR-001

| PLAINTIFF/PETITIONER: DEFENDANT/RESPONDENT: | CASE NUMBER.: |
|---|---|

Date:

____________________ ▶ ____________________

(TYPE OR PRINT NAME) (SIGNATURE OF DEFENDANT)

Date:

____________________ ▶ ____________________

(TYPE OR PRINT NAME) (SIGNATURE OF ATTORNEY FOR DEFENDANT)

ROGER E. GOLD (State Bar No. 214802)
rgold@rgoldlegal.com
CECIL B. CRAIN (State Bar No. 252780)
ccrain@rgoldlegal.com
MIA MATTIS (State Bar No. 191027)
mmattis@rgoldlegal.com
**GOLD LAW FIRM**
591 Redwood Highway, Bldg. 4000
Mill Valley, CA 94941
Tel: (415) 986-1338
Fax (415) 373-4579

ATTORNEYS FOR PLAINTIFFS

SUPERIOR COURT OF THE STATE OF CALIFORNIA
FOR THE COUNTY OF ALAMEDA - UNLIMITED JURISDICTION

JAY W. SANDERS, JR. and JUDY M. SANDERS,

Plaintiffs,

vs.

3M COMPANY, *et al.*,

Defendants.

No. 23CV041073

**PLAINTIFFS' RESPONSES TO DEFENDANTS' STANDARD INTERROGATORIES TO PLAINTIFF**

**(Personal Injury)**

Comes now plaintiff JAY W. SANDERS, JR. and responds to defendants' personal injury interrogatories as follows. Please note that plaintiff has only just begun discovery in this case and that discovery is continuing with respect to each interrogatory and sub-interrogatory. In addition, plaintiff respectfully objects to each interrogatory and sub-interrogatory insofar as it calls for privileged work product or privileged attorney-client communication. Without waiving these objections, plaintiff responds as follows: Plaintiff was deposed on March 27, 1998, at the law offices of Baron & Budd, Dallas, Texas, in his asbestosis personal injury case, Case No. 96-08447-G, filed in in District Court Dallas County, Texas, 134th Judicial District, reported by Dawn E. Workman, Dickman Davenport, Inc. reporters, 214-855-5100, 800-445-9548.

1. A. Jay W. Sanders, Jr., Jay W. Sanders
   B. February 9, 1943
   C. Port Arthur, Texas

D. 7030 Tejas, Baytown, Texas 77521-5057
E. 5'6", 166 lbs
F. --- -- 8098
G. not applicable
H. not applicable
I. 792 49 24, highest rank: MM3 (E4)
J. N9987130 Texas
K. Jay W. Sanders, Jay W. Sanders, Jr
L. 11th grade; passed GED while in US Navy
M. Judy M. Sanders
N. July 4, 1944
O. 6/12/1965-present
P. 7030 Tejas, Baytown, Texas
Q. retired
R.-T not applicable.

2. (1) Jay W. Sanders, III, July 10, 1967, deceased in 2019
(2) Jill Kathleen (Sanders) McCrary, May 11, 1970, Deer Park, Texas, occupation: legal assistant
(3) Nicole Laurel (Sanders) Donham, May 10, 1972, Deer Park, Texas, occupation: medical administrative assistant.

3. No.

4. (a) Mary Isabel Sanders, *mother*
(b) age sixty-two (62)
(c) 1986
(d) Harris County, Texas

(a) Jay W. Sanders, *father*
(b) age seventy-four (74)
(c) 1996
(d) Karnes County, Texas

5. Not to Plaintiff's knowledge.

6. Not applicable.

7. Research and investigation are continuing. Plaintiff currently recalls the below-listed lifetime addresses, all dates are approximate, research and investigation are continuing. Plaintiff's lifetime addresses are as listed below:

| | |
|---|---|
| 5th Street, Port Arthur, Texas | 1943-1960 |
| United States Navy | 1960-1964 |
| 5th Street, Kenedy, Texas | 1964-1965 |
| 317 Parkwood Street, Pasadena, Texas | 1965-1967 |

| | |
|---|---|
| 1705 Deer Ave., Deer Park, Texas | 1967-1990 |
| 7030 Tejas, Baytown, Texas | 1990-present. |

8. Plaintiff completed high school through the 11th grade at Thomas Jefferson High School in Port Arthur, Texas. He later passed his GED high school equivalency examination while serving in the United States Navy.

9. No.

10. Yes. Plaintiff served active duty in the United States Navy 1960 to his honorable discharge in 1964. He completed basic training at San Diego Naval Training Center in Scan Diego, California and was stationed for four to five (4-5) months at Moffett Field in Mountain View, California before boarding USS BON HOMME RICHARD (CVA-31) in San Diego, California where he stayed for the remainder of his service, completing three (3) West Pac cruises. His service number was 792 49 24 and highest rank MM3. He was working and living aboard BON HOMME RICHARD during repair periods at Alameda Naval Air Station, Puget Sound Naval shipyard (regular overhaul three (3) months) and San Diego Naval shipyard, the latter where the ship was homeported and where it was both immediately before and after deployments overseas.

11. Doctor's Name and Address: Yumei Yao, MD, *primary care physician*, VAMC-Houston, Michael E. DeBakey Veterans Affairs Medical Center, 2002 Holcombe Blvd, Houston, Texas, Reason for Treatment: General medical care, Dates of Treatment: 2017 to present.

Doctors' Names and Address: Celyne Bueno Hume, MD, *oncologist*, David Rice, MD, *thoracic surgeon,* MD Anderson Department of General Oncology, Division of Cancer Medicine, 1515 Holcombe Blvd., Houston and 2280 Gulf Freeway South, League City, Texas 77573 Reason for Treatment: Consultations mesothelioma palliative care, tests, chemotherapy to be started begun on 8/24/2023 at MD Anderson Clinic & Hospital, League City, Texas, Dates of Treatment: July 2023 to present.

Doctors' Names and Address: David Ost, MD, *pulmonologist*, Horiana Grosu, MD, *associate professor of Pulmonary Medicine,* 713-792-4015, The University of Texas, MD Anderson Cancer Center, Department of Pulmonary Medicine, Division of Internal Medicine, 1515 Holcombe Blvd., Unit 349, Houston, TX 77030, Reason for Treatment: Consultations pleural effusions. Dates of Treatment: June 2023-present

Doctors' Names and Address: Bihong Zhao, MD, *pathologist*, Mahmoud Elsayad, MD, *pathologist,* Memorial Hermann Texas Medical Center, 6411 Fannin Street, Houston, Texas 77030; Reason for Treatment: Cytology and pathology studies, mesothelioma diagnosis Dates of Treatment: July 2023

Doctors' Names and Address: Travis Green, MD, *urologist,* Gulf Coast Urology, 2020 Nasa Houston Methodist, Nassau, Texas, Reason for Treatment: Consultation for trapped kidney stone, CT scan revealed fluid on lungs, Dates of Treatment: April or May 2023

Doctors' Names and Address: Pushan P. Jani, MD, *pulmonologist*, UT Physicians Internal Medicine – Texas Medical Center, 6410 Fannin Street, Suite 600, Houston, Texas and Memorial Hermann Cancer Center – Texas Medical Cener, 6400 Fannin Street, Suite 2900, Houston, TX 77030, Reason for Treatment: Pulmonology consult, pleuritic pain, cough, shortness of breath, PFT, Chest X-Rays, CT scans Dates of Treatment: June-July 2023.

Doctors' Names and Address: Travis Green, MD, *urologist,* Gulf Coast Urology, Nassau Bay, TX, 2020 Nasa Parkway, Suite 250, Nassau Bay, Texas 77058, Reason for Treatment: kidney stone consultation, treatment, surgery, Dates of Treatment: April-May 2023

Doctors' Names and Address: Yumei Yao, MD, *primary care physician,* various other physicians, VAMC Houston: Michael E. DeBakey Department of Veterans Affairs Medical Center 2002 Holcombe Boulevard, Houston, TX 77030, Reason for Treatment: Diabetes, Dates of Treatment: 2017-present (primary care only: Dr. Yao), 2004-2017 (other doctors)

Doctors' Names and Address: Stephen Esses, MD, *orthopedic surgeon,* Southwest Orthopedic Group, LLP, 6560 Fannin Street, Suite 1016, Houston, TX 77030, Reason for Treatment: Lumbar stenosis, back surgery, Dates of Treatment: 2022

Doctors' Names and Address: Edward W. Leahey, MD, *cardiologist, cardiac surgeon,* Houston Methodist Baytown Hospital, 4201 Garth Rd, Baytown, Texas, Reason for Treatment: angioplasty surgeries (heart stents), consultations, Treatment, monitoring, check ups Dates of Treatment: 2004, 2006

Doctors' Names and Address: Christopher K. Leung, MD, *cardiologist,* Department of Internal Medicine at McGovern Medical School, Department of Internal Medicine, 6431 Fannin, MSB 1.150, Houston, Texas 77030 Reason for Treatment: periodic check-ups. Dates of Treatment: 2008-present

Doctors' Names and Address: Philip R. Orlander, MD, *endocrinologist,* UT Health Houston - UT Physicians Endocrinology – Texas Medical Center, 6410 Fannin, Suite 600, Houston, Texas 77030, Reason for Treatment: Diabetes, Dates of Treatment: 2008-present

12. Without plaintiff's medical records to refresh his memory, plaintiff cannot provide all the detailed medical information sought in these interrogatories. It would be an

extraordinary individual indeed who could recall all of the detailed medical information requested in these interrogatories. This introductory statement is incorporated by reference into each and every interrogatory in this set seeking medical information. In partial response to this interrogatory, please see the information provided below and the information provided in answers to Interrogatories No. 11, 12, 13, 14 and 15, which is the best that plaintiff can do by memory alone at this time. You are referred to the medical records for more complete information.

Plaintiff assumes that the above refers to conditions other than those which are minor, such as flu and/or cold. Plaintiff further states that he cannot recall any other hospital where he has been independently treated during the last 10 years for any condition and beyond 10 years for cancer and/or conditions related to his lungs, respiratory system, and/or ribs and any additional complaints or conditions stated in response to Interrogatory No. 18.

Name and Address of Hospital: Memorial Hermann Health System, Medical Center, 6411 Fannin, Houston, Texas, Memorial Hermann Surgery Center Texas Medical Center, 6400 Fannin, Ste 1500, Houston, Texas

Dates of Test, Treatment, Examination or Hospitalization: June 2023-present; Reason for Hospital Visit: Kidney stone, pleural effusion, pleural biopsy, diagnosis of malignant mesothelioma, thoracotomy with pleural biopsy, cytology and pathology studies

Name and Address of Hospital: MD Anderson ~~Cancer~~ Center, 1515 Holcombe Blvd, Houston, Texas, and MD Anderson ~~Cancer~~ Center, 2280 Gulf Freeway South, League City, Texas, Dates of Test, Treatment, Examination or Hospitalization: June 2023-present; Reason for Hospital Visit: Oncology, surgery consultations (Houston, Texas location), palliative chemotherapy treatments League City, Texas location) mesothelioma

Name and Address of Hospital: University of Texas Medical Center, Dates of Test, Treatment, Examination or Hospitalization: April-May 2023 Reason for Hospital Visit: CT scan, Chest x-ray

Name and Address of Hospital: Houston Methodist Clearlake Hospital, Nassau Bay, Texas, Dates of Test, Treatment, Examination or Hospitalization: April-May 2023, Reason for Hospital Visit: kidney stone surgery

Name and Address of Hospital: VAMC Houston, Michael E. DeBakey Department of Veterans Affairs Medical Center, 2002 Holcombe Blvd., Houston, Texas 77030 Dates of Test, Treatment, Examination or Hospitalization: General medical care, for additional information, please see Plaintiff's medical records Reason for hospital visit: Primary care (since 2005 approximately), emergency room (2021), cataract surgery (2015)

Name and Address of Hospital: Altus Hospital, 720 1/2 Rollingbrook St, Baytown, TX 77521 Dates of Test, Treatment, Examination or Hospitalization: 2022, outpatient back surgery, Reason for Hospital Visit: Lumbar stenosis treatment

Name and Address of Hospital: Baylor College of Medicine Houston, Texas
Dates of Test, Treatment, Examination or Hospitalization: 1999 prostate cancer surgery, 2013 radiation treatment for prostate cancer, Reason for Hospital Visit: Prostate cancer

Name and Address of Hospital: St. Mary's Hospital, Port Arthur, Texas
Dates of Test, Treatment, Examination or Hospitalization: Approximately 1950-51
Reason for Hospital Visit: Appendectomy

Name and Address of Hospital: Southmore Hospital, Pasadena, Texas
Dates of Test, Treatment, Examination or Hospitalization: Approximately 1972 Reason for Hospital Visit: Vasectomy, fatty tumor

13. Please see plaintiff's answers to Interrogatories 12 and 13, above. Plaintiff does not recall the specifics regarding these x-rays and CT scans. For more specific information, please see plaintiff's medical records which plaintiff believes have been obtained by designated defense counsel Spanos | Przetak. Plaintiff has not made any compilation or abstract of records, and therefore, pursuant to Code of Civil Procedure Section 2030.230, plaintiff refers defendants to his medical records for additional information:

Where X-ray was Taken: Memorial Hermann Health System: Memorial Hermann Imaging Center at Texas Medical Center, 6400 Fannin, Ste. 1600, Houston, Texas; Memorial Hermann Imaging Center – Bayshore Imaging Center, 11476 Space Center, Ste. 200, Houston, Texas
Dates and No. X-Rays Taken: June-July 2023
Parts of Body X-rayed: Trunk, chest, abdomen
Results, Conclusions and/or diagnosis from X-ray: Pleural effusions, plaintiff refers defendants to his medical records;

Where X-ray was Taken: MD Anderson Cancer Center, 1505 Holcombe Blvd, Houston, Texas, Dates and No. X-Rays Taken: June-July 2023
Parts of Body X-rayed: Trunk, chest, abdomen
Results, Conclusions and/or diagnosis from X-ray: Pleural effusions; plaintiff refers defendants to his medical records

Where X-ray was Taken: Houston Methodist Clearlake Hospital, Nassau Bay, Texas, Dates and No. X-Rays Taken: April-May 2023
Parts of Body X-rayed: Trunk, chest, abdomen
Results, Conclusions and/or diagnosis from X-ray: Kidney stone, pleural effusion; plaintiff refers defendants to his medical records

14. Please see plaintiff's answers to Interrogatories 12 and 13, above. Plaintiff does not recall the specifics regarding pulmonary function tests. For more specific information, please see plaintiff's medical records which plaintiff believes have been obtained by defense liaison counsel Spanos | Przetak. Plaintiff has not made any compilation or abstract of those records, and therefore, pursuant to Code of Civil Procedure Section 2030.230 plaintiff refers defendants to his medical records.

Plaintiff refers to his medical records as the best source of information available. Plaintiff has not made any compilation or abstract of those records, and therefore, pursuant to Code of Civil Procedure Section 2030.230 plaintiff refers defendants to his medical records at the following facilities from the following doctors: MD Anderson, Department of Pulmonology, Oncology Houston, Texas.

15. Plaintiff refers to defendants to his medical records as the best source of information available. Plaintiff has not made any compilation or abstract of those records, and therefore, pursuant to Code of Civil Procedure Section 2030.230 plaintiff refers defendants to his medical records and responds as follows: Prescribed medication for management of Type II diabetes, high blood pressure and cholesterol.

16. Plaintiff has identified medical treatment he recalls he received in answers to Interrogatories Nos. 12 through 16. He believes that all medical reports pertaining to this treatment have been provided to and/or have been authorized to be obtained by the law firm of Spanos | Przetak. If there are any medical reports to which this inquiry is addressed, plaintiff believes that they would be found in those records. Plaintiff refers to his medical records as the best source of information available. Additionally, plaintiff has previously provided Spanos | Przetak with copies of medical records. Plaintiff has not made any compilation or abstract of those records, and therefore, pursuant to Code of Civil Procedure Section 2030.230 plaintiff refers defendants to his medical records.

17. Plaintiff refers to defendants to his medical records as the best source of information available. Plaintiff has not made any compilation or abstract of those records, and therefore, pursuant to Code of Civil Procedure Section 2030.230 plaintiff refers defendants to his medical records. Additionally, plaintiff responds as follows:

a. In April 2023, Plaintiff started suffering severe pain related to a trapped kidney stone. His urologist, Dr. Green, prescribed medication to relax his kidneys and bladder, but when that did not help, he ordered a CT scan in mid-April. The CT scan taken in April or May 2023 revealed a large pleural effusion on Plaintiff's lungs and he was experiencing increasing shortness of breath. He was next seen by his endocrinologist, Dr. Orlander, who immediately sent him for CXR and another CT scan and within one week later, he was seen by his pulmonologist Dr. Jani who subsequently removed two (2) liters of fluid from Plaintiff's lung. Four to five days later, Dr. Jani drew out another two (2) liters of fluid from Plaintiff's pleura and performed a fine needle tissue biopsy. Another biopsy was later taken at MD Anderson. Dr. Jani informed Plaintiff that he had cancer. Plaintiff was diagnosed with malignant mesothelioma on July 13, 2023;

b. Complaints, symptoms are ongoing;
c. Various examinations and procedures including, but not limited to, thoracenteses, pleural biopsy, pulmonary function tests, chest x-rays, CT scans, chemotherapy
d. All parts of plaintiff's body have been and will continue to be affected
e. July 13, 2023
f. Drs. Green, Orlander, Jani, Bueno-Hume, See above, Responses to Interrogatory Nos. 11 and 12
g. Plaintiff was retired at the time of his diagnosis, and he had a very active life volunteering full time until he became too sick to continue
h. Not applicable.

18. a. on or about July 13, 2023, Plaintiff was diagnosed with asbestos caused malignant mesothelioma; Plaintiff was previously informed that he had pleural thickening and asbestosis in the mid to late 1990s
b. Dr. Jani, Dr. Bueno Hume, see above, Response to Interrogatory No. 11 and Plaintiff's medical records for additional information.
c. Dr. Bihong Zhao, Dr. Mahmoud Elsayad, *pathologist*s at Memorial Hermann Texas Medical Center, 6411 Fannin Street, Houston, Texas 77030
d. pathology studies
e. Drs. Zhao, Elsayad at Memorial Hermann Dept of Pathology and pathologists at MD Anderson
f. Plaintiff's family, physicians, attorneys
g. not applicable; Plaintiff was retired at the time of diagnosis
h. thoracenteses, tissue biopsy, radiology and pathology studies, chemotherapy, Memorial Hermann, MD Anderson, see addresses listed above in Response to Interrogatory Nos. 11 and 12
i. Yes
j. Please see Plaintiff's medical records and see Responses to Interrogatory Nos. 11 and 12, above;

19. Not that plaintiff recalls.

20. Since the mid-1990s, Plaintiff has suffered some breathing difficulties but noticed his shortness of breath gradually increasing over the past few years.

21. Yes.
a. Pushan Jani, MD, interventional pulmonary medicine and critical care
b. Memorial Hermann Texas Medical Center, 6411 Fannin Street, Houston, Texas 77030
c. June-July, 2023
d. malignant mesothelioma, epithelioid type.

22. Pathology and cytology studies, slides were made from tissue taken as part of biopsy and fluid drained from the right pleura performed by Dr. Pushan Jani at Memorial Hermann Texas Medical Center, 6411 Fannin Street, Houston Texas 77030 pathology laboratory.

a.-b. Drs. Pushan Jani and Bihong Zhao, Mahmoud Elsayad, Memorial Hermann Texas Medical Center, 6411 Fannin Street, Houston Texas 77030 pathology laboratory, Accession No. 35825052 and CN23-1599; see plaintiff's medical records; for additional information, please see Plaintiff's medical records.

c. original slides, blocks with pathology department at Memorial Hermann Texas Medical Center, 6411 Fannin Street, Houston, Texas; recut slides, ordered by Plaintiffs' counsel, pending receipt

d. July 13, 2023, for additional information, see plaintiff's medical records.

23. Plaintiff has identified medical treatment he recalls receiving in his answers to Interrogatories Nos. 12 through 15. He believes that all medical reports pertaining to this treatment will be subpoenaed by the law firm of Spanos | Przetak based on plaintiff's answers to interrogatories. If there are any medical reports to which this inquiry is addressed, plaintiff believes that they would be found in those records. Plaintiff refers to his medical records as the best source of information available. Plaintiff has not made any compilation or abstract of those records, and therefore, pursuant to Code of Civil Procedure Section 2030.230 plaintiff refers defendants to his medical records.

24. No.

25. Yes.

26. (a) 1957 or 1958-1978
(b) cigarettes
(c) daily
(d) not applicable
(e) not applicable
(f) one pack or less per day
(g) Camel, Kool

27. Not to Plaintiff's recollection.

28. Plaintiff respectfully objects to this interrogatory as being an invasion of privacy, and on the grounds it assumes a pattern of alcohol consumption over plaintiff's lifetime. Plaintiff further responds: Plaintiff does not drink alcoholic beverages. He used to drink beer socially but stopped drinking alcoholic beverages approximately fifteen (15) years ago.

29.-30. For every type of employment you have ever had, whether self-employed or employed by others. For additional information, Plaintiff refers defendants to his Social Security Statement of Earnings (1960-1995), copy attached to these Responses, that lists employers, earnings and years of employment. Additionally, these records are made equally available to defendants by Plaintiff's authorization provided or to be provided shortly to designated defense counsel Spanos | Przetak.

Plaintiff's research and investigation are ongoing as to any exposures to asbestos, including manner and duration, supervisors, co-workers' names, addresses at any employments listed on Plaintiff's Social Security Records where plaintiff claims exposure to asbestos.

**The Crown Drive-In Restaurant**, Port Arthur, Houston, owned by Plaintiff's uncle, aunt and father, job title: soda jerk, worked here part-time after school approximately 1.5 to 2 years. No exposure to asbestos.

Employer Name, Address: **United States Navy**
Dates of employment: February 1960-1964
Job Title: fireman (FN), machinist mate (MM3)
Job Site(s): San Diego Naval Training Center San Diego, California (basic training); Moffett Field, Mountain View, California (4-5 months); San Diego Naval Shipyard, San Diego, California, USS BON HOMME RICHARD (CVA-31): Alameda Naval Air Station, Alameda, California, Puget Sound Naval Shipyard, Bremerton, Washington, three (3) West Pac cruises
Description of job duties: Plaintiff was responsible for operation and maintenance of various machinery and equipment related to the engine and fireroom equipment including but not limited to valves, evaporators, pumps, condensers, packing, gaskets, rope and other equipment of the steam powered aircraft carrier Navy ship BON HOMME RICHARD (CVA-31)
Exposure to Asbestos: Yes.

Employer's Name & Address: **H.B. Zachry Co.**, San Antonio, Texas
Dates of employment: 1964-1965
Job title: pipefitter's helper
Job Site(s): Central Power & Light Steam Plant, Corpus Christi, Texas (two (2) months)
Description of job duties: putting pipes together changing gaskets and packing, insulation removal
Exposure to Asbestos: Yes; Plaintiffs' research and investigation are continuing;

Employer's Name & Address: **Brown & Root, Inc**., Houston, Texas
Dates of employment: 1964-1965
Job title: pipefitter's helper
Job Site(s): Central Power & Light Steam Plant, San Antonio, Texas (one (1) month)
Description of job duties:
Exposure to Asbestos: Yes; Plaintiffs' research and investigation are continuing;

Employer's Name & Address: Joe C. Norman, **Norman Equipment Co**, Orange, Texas
Dates of employment: 1965 about two months
Job title: road construction worker in Orange County, Texas
Description of job duties: Plaintiff's investigation and discovery are continuing;
Exposure to Asbestos: Plaintiffs do not currently allege exposure to asbestos at this employment.

Employer's Name & Address: **American Can Co.**, New York City, New York
Dates of employment: 1965, four (4) months total
Job title: Stacker-Tender
Job Site(s): American Can Metals Plant, Houston, Texas
Description of job duties: production line worker stacking cans, seasonal layoffs, found another job
Exposure to Asbestos: Plaintiffs' research and investigation are continuing;

Employer's Name & Address: **A.J. Mundy, Inc., Houston, Texas**
Dates of employment: 1965-1966, three (3) months total
Job title: Warehouseman
Job Site(s): Carwin-Upjohn-Dow Chemical Plant, La Porte, Texas
Description of job duties: filling drums, pallets, stacking drums, pallets with forklifts
Exposure to Asbestos: Yes; Plaintiffs' research and investigation are continuing;

Employer's Name & Address: **Industrial Plant Maintenance Inc.**
Dates of employment: 1966, five (5) months total
Job title: Warehouseman
Job Site(s): Carwin-Upjohn-Dow Chemical Plant, La Porte, Texas
Description of job duties:
Exposure to Asbestos: Plaintiffs' research and investigation are continuing;

Employer's Name & Address: **Upjohn-Dow Chemical,** Kalamazoo, Midland, Michigan
Dates of employment: Upjohn Company (1965-1984), Dow Chemical Co. (1985-1994)
Job titles: Warehouseman (1965-1966), Production Operator (1966-1985; 1987-1992), Safety-Coordinator (1985-1986), Distribution Supervisor (1992-1994)
Job Site(s): Carwin-Upjohn-Dow Chemical Plant, La Porte, Texas
Description of job duties:
Exposure to Asbestos: Yes, various equipment including valves, gaskets, rope packing, insulating cements, refractory cements, pipe covering, floor tile, roof coating, boilers, turbines

Employer's Name & Address: **AdminStaff, Inc.**, 19001 Crescent Springs Dr, Kingwood, Texas 77339
Dates of employment: 1985
Job title: Worker, Houston Safety Council
Description of job duties: training plant safety
Exposure to Asbestos: Plaintiffs do not currently allege exposure to asbestos at this employment; Plaintiffs' research and investigation are continuing;

Employer's Name & Address: **Houston Area Contractors Safety**, 1803 Center St., Deer Park, Texas
Dates of employment: 1995
Job title: Worker
Description of job duties:

Exposure to Asbestos: Plaintiffs do not currently allege exposure to asbestos at this employment; Plaintiffs' research and investigation are continuing;

31. Plaintiff may have been exposed to asbestos in his youth during years that his father was working as a pipefitter for Gulf Oil at the Gulf Oil refinery located in Port Arthur, Texas (1951-1953), and his father's work clothes were laundered in the family home; research and investigation are continuing.

Plaintiff performed brake work on his own and family members' automobiles over the years, beginning in the 1960s and when his children were young. Plaintiff last performed brake work on cars approximately fifteen (15) years ago.

32.-39. Plaintiff has provided responsive, currently available information on the details requested in responses. Where incomplete supplier/distributor identification is provided, or no supplier/distributor is identified at all, plaintiff does not currently have sufficient information to respond more fully to the interrogatory. Plaintiff continues to search for information, including public databases, co-workers, construction contracts, building permits and defendants responses to standard and case specific discovery to complete these responses. Plaintiff reserves the right to use such information that is discovered after the service of these responses.

Additional information may be found or identified through equally available sources such as defendants' business records, defendants' responses to standard and case-specific discovery, building permits, construction contracts and discovery propounded in specific cases and *In Re* Complex Litigation. Other than this information, plaintiff does not currently have sufficient information to further respond more fully to these interrogatories. Plaintiff continues to search these equally available resources and public databases such as identified co-workers, construction contracts, building permits and defendants responses to standard and case specific discovery to complete these responses. Plaintiff reserves the right to supplement these responses with such information and/or introduce, at trial, such information that is discovered after the service of these responses. Plaintiff's research and investigation are continuing and will make further documents available to defendants for review and or photocopying at a mutually convenient time and location as they become available. Discovery and investigation are continuing.

40. Not until much later in his career, after he had become a safety supervisor for Dow, did Plaintiff receive any training. Plaintiff recalls that, at the time, they were bringing an old unit back on line and Dow Chemical was just instituting some safety procedures relating to asbestos, protocols, during approximately the late 1980s, including new safety procedures for removing and replacing gaskets.

41. From the late 1980s, Plaintiff would use fresh breathing air mask, piped in air, when working in asbestos areas.

42. Not Plaintiff's knowledge or recollection.

43. Upjohn started giving Plaintiff and other employees annual physicals from the time he was first employed, and Dow Chemical continued this practice. He does not recall that physical examinations included a chest x-ray, but he does recall that he was administered breathing tests as part of the annual examination. Plaintiff believes he may have received the results of his annual examination, but he does not specifically recall. He does not recall the names of physicians at Dow Chemical, but does recall that Upjohn and later Dow both had their own plant doctors and full-time nurses.

44. Yes. Plaintiff was a member of the United Steelworkers Union, Houston, Texas as was required during his mid-1960s, employment with American Can. Plaintiff did not attend meetings, nor did he ever receive any literature about asbestos.

45. No.

46. No.

47. No.

48. No.

49. Plaintiff was retired at the time he became ill with mesothelioma. He took a normal age related retirement from Dow Chemical in 1995. After that, plaintiff volunteered full time for non-profit organization including his local Veterans of Foreign Wars for fourteen (14) years prior to his illness.

50. Not applicable. Plaintiff has been retired for the past ten (10) years.

51. Plaintiff's hospital expenses are expected to be ongoing, and Plaintiff respectfully refers defendants to his medical records for the best source of this information. Plaintiff has made no compilation of his medical records and this information is equally available to defendants by authorization which Plaintiff will provide to designated defense counsel Spanos | Przetak. Please see plaintiff's responses to interrogatories 12 and 13 above. For the total amount of hospital expenses, please see plaintiff's medical records for which Spanos | Przetak has been or will be provided directly or via authorizations. Plaintiff has not made any compilation or abstract of those records, and therefore, pursuant to Code of Civil Procedure Section 2030.230 plaintiff refers defendants to his medical records. Research and investigation are continuing.

52. Plaintiff's medical expenses are ongoing and continuing. Plaintiff respectfully refers defendants to his medical records for the best source of this information. Plaintiff has made no compilation of his medical records and this information is equally available to defendants by authorization which Plaintiff will provide to designated defense counsel Spanos | Przetak. For the total amount of medical expenses, plaintiff respectfully refers defendants to his medical records for which Spanos | Przetak has been or will be provided authorizations. Plaintiff has not made any compilation or abstract of those records, and therefore, pursuant to Code of Civil Procedure Section 2030.230 plaintiff refers

defendants to his medical records. Furthermore, research and investigation are continuing as to all other costs incurred by Plaintiff.

53. Plaintiff respectfully objects to this interrogatory insofar as it requests information concerning health or accident insurance benefits, disability benefits and accident compensation benefits on the grounds that the question is irrelevant, overbroad, constitutes a violation of the collateral source rule, and constitutes an invasion of plaintiff's privacy in violation of Article I, Section I of the California Constitution. Please see *Hallendorf v. Superior Court* and related cases. Without waiving these objections, plaintiff responds: Plaintiff is a Medicare member; his member ID number is 8R59-Y26-VH39. He has supplemental insurance through Medicare Advantage through former employer Dow Chemical policy number Aetna ID member no. 101364880900.

54.-55. Yes. A report by Plaintiff's economist will be provided at the appropriate time.

56.-57. Plaintiff respectfully objects to this interrogatory insofar as it requests information concerning health or accident insurance benefits, disability benefits and accident compensation benefits on the grounds that the question is irrelevant, overbroad, constitutes a violation of the collateral source rule, and constitutes an invasion of plaintiff's privacy in violation of Article I, Section I of the California Constitution. Please see *Hallendorf v. Superior Court* and related cases. Without waiving these objections, plaintiff responds: No, no other than insurance companies for various asbestos companies or their bankruptcy trusts whom Plaintiff sued or filed claims against for his asbestosis during his third party case filed in Texas in approximately 1998.

58. Plaintiff respectfully objects to this interrogatory insofar as it requests information concerning health or accident insurance benefits, disability benefits and accident compensation benefits on the grounds that the question is irrelevant, overbroad, constitutes a violation of the collateral source rule, and constitutes an invasion of plaintiff's privacy in violation of Article I, Section I of the California Constitution. Please see *Hallendorf v. Superior Court* and related cases. Without waiving these objections, plaintiff responds as follows: Plaintiff filed claims with the Veterans Administration for service-related hand injury, hearing loss, and asbestosis.

(a) hand injury, hearing loss, asbestosis
(b) During 1960-1964.
(c) United States Navy
(d) Veterans Administration
(e) Research and investigation continuing
(f) Approximately 1990s and 2018
(g) 458 64 8098
(h) settled; unknown as to asbestosis claim
(i) settlements are confidential but an aggregate settlement number would be provided post verdict for offset purposes
(j) settlements are confidential but an aggregate settlement number would be provided post verdict for offset purposes
(k) Veteran's Administration, United States government.

59. No.

60. Yes.
(a) *Frank John Spahn, et al. (Jay W. Sanders) v Owens-Corning Fiberglas Corporation, et al.*
(b) District Court Dallas County, Texas, 134th Judicial District, approximately 1998.
(c) asbestosis
(d) settled; research and investigation are continuing

61. No.

62. Yes. Plaintiff settled at much reduced rates with various asbestos company bankruptcy trusts and at the time still solvent asbestos companies, as listed below, for asbestosis: Combustion Engineering, Fibreboard, Foster Wheeler, General Electric, Kaiser Aluminum, W.R. Grace, Celotex, Eagle Picher, HK Porter, Manville, Crown Cork & Seal, Dana, Flintkote, GAF, Garlock, General Refractories, Kelly Moore, Halliburton Trust, NARCO, Metropolitan Life, Owens Corning, Pittsburg Corning, Proko, Rapid American, Synkoloid, US Mineral, various, during the years 1998 through 2007; research and investigation are continuing.

Plaintiff may have settled with bankrupt asbestos companies group formerly known as the Center for Claims Resolution in the as listed below: AP Green, Armstrong/ACandS, Dana, CertainTeed, National Gypsum, Quigley, Turner & Newall and US Gypsum; research and investigation are continuing.

63. Please see Response above to Interrogatory Nos. 32-39. Plaintiffs' research and investigation are continuing.

64. Plaintiff is not presently aware of any additional responsive tangible items; research and investigation, discovery are all ongoing.

65. Plaintiff is not presently aware of any additional responsive tangible items; research and investigation, discovery are all ongoing.

////

////

////

////

////

66. Plaintiff's counsel for his 1998 asbestosis case obtained a copy of Plaintiff's Social Security Statement of Earnings years 1960-1995 from the Social Security Administration and a copy is attached to these Responses.

67. No one other than my attorneys and their employees.

DATED: August 17, 2023.

**GOLD LAW FIRM**

Roger E. Gold

ROGER E. GOLD
Attorney for Plaintiffs

**VERIFICATION**

I, JAY W. SANDERS, declare that:

I am the plaintiff named in the foregoing action; that I have read the foregoing

**PLAINTIFFS RESPONSES TO DEFENDANTS' STANDARD INTERROGATORIES TO PLAINTIFF (Personal Injury)**

and know the contents thereof; the same is true of my own knowledge, except as to those matters therein stated on information and belief, and as to those matters, I believe it to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this verification was executed in Baytown, Texas on this 17 day of August 2023.

JAY W. SANDERS

LEGEND: Insert N/A in the items below which are not applicable

**PERSONAL DATA**

1. LAST NAME – FIRST NAME – MIDDLE NAME: SANDERS JAY "W" JR.
2. SERVICE NUMBER: 792 49 24
3 a. GRADE, RATE OR RANK: MM3(E4)
b. DATE OF RANK (Day, Year): 16 JAN 6
4. DEPARTMENT, COMPONENT AND BRANCH OR CLASS: NAVY - USN
5. PLACE OF BIRTH (City and State or Country): PORT ARTHUR, TEXAS
6. DATE OF BIRTH: DAY 9 MONTH FEB
7 a. RACE: - - -
b. SEX: MALE
c. COLOR HAIR: BROWN
d. COLOR EYES: GREEN
e. HEIGHT: 68"
f. WEIGHT: 158
8. U.S. CITIZEN: [X] YES [ ] NO
9. MARITAL STATUS: SING
10 a. HIGHEST CIVILIAN EDUCATION LEVEL ATTAINED: HIGH SCHOOL - 2
b. MAJOR COURSE OR FIELD: VOCATIONAL

**TRANSFER OR DISCHARGE DATA**

11 a. TYPE OF TRANSFER OR DISCHARGE: TRANSFERRED TO RESERVE
b. STATION OR INSTALLATION AT WHICH EFFECTED: U.S. NAVAL RECEIVIN STATION, TREASURE ISLAND, SAN FRANCISCO, CAL
c. REASON AND AUTHORITY: BUPERS MANUAL ARTICLE C-10317 -205 RELEASE FROM ACTIVE DUTY AND TRANSFER TO NAVAL RESERVE
d. EFFECTIVE DATE: DAY 20 MONTH OCT
12. LAST DUTY ASSIGNMENT AND MAJOR COMMAND: USS BON HOMME RICHARD (CVA 31)
13 a. CHARACTER OF SERVICE: HONORABLE
b. TYPE OF CERTIFICATE ISSUED: DD217N

**SELECTIVE SERVICE DATA**

14. SELECTIVE SERVICE NUMBER: NA
15. SELECTIVE SERVICE LOCAL BOARD NUMBER, CITY, COUNTY AND STATE: NOT REGISTERED
16. DATE INDUCTED: DAY MONTH: NOT APPLICA

17. DISTRICT OR AREA COMMAND TO WHICH RESERVIST TRANSFERRED: COMMANDING OFFICER, NAVAL RESERVE MANPOWER CENTER, NAVAL TRAINING CENTER, BAINBRIDGE, MARYLAND

**SERVICE DATA**

18. TERMINAL DATE OF RESERVE OBLIGATION: DAY 15 MONTH FEB YEAR 66
19. CURRENT ACTIVE SERVICE OTHER THAN BY INDUCTION
a. SOURCE OF ENTRY: [X] ENLISTED (First Enlistment) [ ] ENLISTED (Prior Service) [ ] REENLISTED [ ] OTHER:
b. TERM OF SERVICE (Years): MIN *
c. DATE OF ENTRY: DAY 16 MONTH FEB
20. PRIOR REGULAR ENLISTMENTS: NONE
21. GRADE, RATE OR RANK AT TIME OF ENTRY INTO CURRENT ACTIVE SERVICE: SR
22. PLACE OF ENTRY INTO CURRENT ACTIVE SERVICE (City and State): PORT ARTHUR, TEXAS
23. HOME OF RECORD AT TIME OF ENTRY INTO ACTIVE SERVICE (Street, RFD, City, County and State): PORT ARTHUR, JEFFERSON, TEXAS

24. STATEMENT OF SERVICE

| | | YEARS | MONTHS |
|---|---|---|---|
| a. CREDITABLE FOR BASIC PAY PURPOSES | (1) NET SERVICE THIS PERIOD | 04 | 08 |
| | (2) OTHER SERVICE | 00 | 00 |
| | (3) TOTAL (Line (1) + line (2)) | 04 | 08 |
| b. TOTAL ACTIVE SERVICE | | 04 | 08 |
| c. FOREIGN AND/OR SEA SERVICE | | 03 | 10 |

25 a. SPECIALTY NUMBER AND TITLE: MM-0000
b. RELATED CIVILIAN OCCUPATION AND D. O. T. NUMBER: MAINTENANCE MAN, ENGIN 5-83.641 (WATER TRANS.)
26. DECORATIONS, MEDALS, BADGES, COMMENDATIONS, CITATIONS AND CAMPAIGN RIBBONS AWARDED OR AUTHORIZED: NONE
27. WOUNDS RECEIVED AS A RESULT OF ACTION WITH ENEMY FORCES (Place and date, if known): NONE
28. SERVICE SCHOOLS OR COLLEGES, COLLEGE TRAINING COURSES AND/OR POST-GRADUATE COURSES SUCCESSFULLY COMPLETED

| SCHOOL OR COURSE a | DATES (From - To) b | MAJOR COURSES c |
|---|---|---|
| NONE | | |

29. OTHER SERVICE TRAINING COURSES SUCCESSFULLY COMPLETED: FN BMR PO3&2

**VA DATA**

30 a. GOVERNMENT LIFE INSURANCE IN FORCE: [ ] YES [X] NO
b. AMOUNT OF ALLOTMENT: NOT APPLICABLE
c. MONTH ALLOTMENT DISCONTINUED: NOT APPLICA
31 a. VA BENEFITS PREVIOUSLY APPLIED FOR (Specify type): NONE
b. VA CLAIM NUMBER: C- NONE

**AUTHENTICATION**

32. REMARKS

RECOMMENDED FOR REENLISTMENT
SOCIAL SECURITY NUMBER: 458 64 8098
NUMBER OF DAYS LEAVE PAID: 57
EXCESS LEAVE: NONE
TIME LOST: NONE
*EXT ENL 08 MONTHS ON 9 FEB 64 & 12 DAYS FOR ADMIN REASONS

33. PERMANENT ADDRESS FOR MAILING PURPOSES AFTER TRANSFER OR DISCHARGE (Street, RFD, City, County and State): 421 8TH ST. KENEDY, KARNES, TEXAS
34. SIGNATURE OF PERSON BEING TRANSFERRED OR DISCHARGED: [signature]
35 a. TYPED NAME, GRADE AND TITLE OF AUTHORIZING OFFICER: J. G. HUTCHINSON, LTJG, USN SEP OFF BY DIR OF THE C.O.
b. SIGNATURE OF OFFICER AUTHORIZED TO SIGN: [signature]

DD FORM 1 NOV 55 214 — REPLACES EDITION OF 1 JUL 52, WHICH IS OBSOLETE. — ARMED FORCES OF THE UNITED STATES REPORT OF TRANSFER OR DISCHARGE

EXEMPT REPORT

# ENLISTED CLASSIFICATION RECORD

000

| LAST NAME | FIRST | MIDDLE | SERVICE NO. | RATE | Class No. | CO. NO. | D.O.T. OCCUP. COD |
|---|---|---|---|---|---|---|---|
| SANDERS | JAY" W" JR | | 7924924 | SR | 11 | 090 | 000.000 |

| Yr. Birth | GCT | ARI | MECH. | CLER. | BTB Form | SONAR | RADIO | ETST |
|---|---|---|---|---|---|---|---|---|
| 43 | 41 | 51 | 49 | 48 | 6 | | 52 | |

TEST SCORE PROFILE

| | GCT | ARI | MECH. | CLER. |
|---|---|---|---|---|
| HIGH 1 | | | | |
| 2 | | | | |
| AVER. 3 | | X | X | X |
| 4 | X | | | |
| LOW 5 | | | | |

SPECIAL TEST SCORES

| NAME | FORM | DATE | SCORE |
|---|---|---|---|
| | | | |

| MOST SIGNIFICANT EDUCATION | DATES | YEARS EDUCATION | DEGREE | NAME OF COLLEGE OR UNIVERSITY |
|---|---|---|---|---|
| High School | *9/57-1/60 | 10 | - | |

MAJOR COURSES: Vocational

| SPECIAL STUDIES | ALG.-GEOM. | TRIG. | PHYS. | TYPING | SHORTHAND |
|---|---|---|---|---|---|
| HIGH SCH. | 1 | - | - | - WPM | - WPM |
| COLLEGE | | | | WPM | WPM |

SPECIALIZED TRAINING (Vocational, trade, technical, business)

-

* Attended 4 months of Eleventh grade.

LEISURE TIME ACTIVITIES: Auto Mechanics (minor repairs)

SPORTS IN WHICH QUALIFIED: -

TALENT FOR PUBLIC ENTERTAINMENT: -

HIGHEST POSITION OF LEADERSHIP: -

MAIN CIVILIAN OCCUPATION (D. O. T. TITLE): STUDENT

EMPLOYER'S NAME: AFT Form 1 administered 20 MAY 1964 at US Naval Station, Navy 3002.
ESS: READ 42, MATH 37
PHYS 48, ELEC 46

Verified by: GORDON ADAMS, PNCA, USN
Enlisted Classifier

| LOCATION | YRS. SERVICE | WKLY. WAGE | TRADE TEST NAME | SCORE |
|---|---|---|---|---|
| | | $ | | |

DUTIES, SKILLS, MACHINES

SECOND BEST OCCUPATION (D. O. T. TITLE): -

EMPLOYER'S NAME

| LOCATION | YRS. SERVICE | WKLY. WAGE | TRADE TEST NAME | SCORE |
|---|---|---|---|---|
| | | $ | | |

DUTIES, SKILLS, MACHINES

OTHER WORK EXPERIENCE: -

| RIGHT EYE UNCORR. | RIGHT EYE CORR. | LEFT EYE UNCORR. | LEFT EYE CORR. | RIGHT HANDED | LEFT HANDED | QUALIFIED SWIMMER CLASS | QUALIFIED FOR | NOT QUALIFIED FOR |
|---|---|---|---|---|---|---|---|---|
| 20/20 | | 20/20 | | X | | III | | |

CODED RECOMMENDATIONS: 3-58-57

REMARKS: General Mathematics - 1 yr; Woodworking - yrs; Metal Shop - 2 yrs, HS

RECOMMENDED TO STRIKE FOR: Mechanic/Fabrication Ratings

PREPARING ACTIVITY: USNTC, San Diego, California

VOLUNTEER FOR: -

INITIALS

INTERVIEWEE'S SIGNATURE: Jay "W" Sanders, Jr.
JAY "W" SANDERS, JR.

VERIFIED: G. MICHAL JR., PN1, USN

DATE: 3/16/60

ENLISTED CLASSIFICATION RECORD NAVPERS-601 (Rev. 3-57)

# Surgical Pathology - Details

## Component Results

| Component | Your Value | Standard Range | Flag |
|---|---|---|---|
| **Diagnosis** | **Your Value**<br>**Pleura, right , biopsy:**<br>**- Favor mesothelioma, epithelial type**<br>**- See comment** | | |

BZ/BZ 07/13/2023 Electronic Signature: Zhao, Bihong MD

| | | | |
|---|---|---|---|
| **COMMENT** | **Your Value**<br>**To classify this malignant tumor, immunohistochemical (IHC) stains for Calretinin, D2-40, TTF-1, MOC-31, Desmin, BER-EP4, PSA and NXK3.1 were performed on this biopsy. The results show the epithelial cells are positive for MOC-31, BER-EP4, mixed with positive D2-40 and Calretinin cells. TTF-1 is negative. For prostatic specific markers, PSA is totally negative, while NXK3.1 stained a few cells. Further, unstained slides were sent to Neogenomic for IHC for BAP-1, which shows the lost nuclear expression in the malignant cells.**<br><br>**This case was presented and discussed at the QA meeting on 06/28/2023. The meeting suggested to send slides to outside lab to do IHC on BAP-1. The case was brought to QA meeting again on 07/13/2023 after receiving the IHC for BAP-1. After discussing in this group, mesothelioma is favored.** | | |
| **Specimen Source** | **Your Value**<br>**1. Right pleural biopsy** | | |
| **Clinical Information** | **Your Value**<br>**Clinical history: 80-year-old male, former smoker with recurrent right pleural effusion**<br>**Operative procedure: Fluoroscopy** | | |

| Component | Your Value | Standard Range | Flag |
|---|---|---|---|
| Gross Description | **Your Value**<br>The case is received in 1 part labeled: Sanders, Jay and 35825052<br><br>1. The specimen is received in formalin labeled with the patient's name, MRN, and "right pleural biopsy." It consists of a 2.5 x 2.0 x 0.5 cm aggregate of tan-pink soft tissue which is submitted in toto in cassette 1A.<br><br>HF 06/16/2023 12:26<br><br>Specimen examined at Memorial Hermann Texas Medical Center. Final diagnosis rendered at Memorial Hermann Texas Medical Center.<br>6411 Fannin St. Houston, TX 77030 | | |
| Microscopic Description | **Your Value**<br>Microscopic examination performed, findings are incorporated into the diagnostic section. | | |
| Non Clinical Documentation | **Your Value**<br>88305 GC x 1, 88342 GC x 1, 88341 GC x 8 | | |
| Teaching Physician Statement | **Your Value**<br>"I have personally reviewed the resident's gross description and all specimen preparations and have personally issued this report." | | |

## General Information

Ordered by Pushan Jani

Collected on 06/16/2023 11:10 AM

Resulted on 06/16/2023 11:10 AM

Result Status: Final result

This test result has been released by an automatic process.

MyChart® licensed from Epic Systems Corporation © 1999 - 2023

# Cytopathology - Details

## Component Results

| Component | Your Value | Standard Range | Flag |
|---|---|---|---|
| **Diagnosis** | **Your Value**<br>**Pleural Fluid, Right; Aspiration:**<br>**- Atypical Cells Present.** | | |

MO/,AM 06/17/2023 Completed by: Mahmoud Elsayad, MD Electronic Signature 06/24/2023

| | | | |
|---|---|---|---|
| **COMMENT** | **Your Value**<br>**Immunohistochemical stains performed on the cell block show that the cells of interest are positive for Calretinin, D2-40, MOC31, and BER-EP4, while negative for NKX3.1. See also the prior cytology report CN23-1599.** | | |
| **Specimen Source** | **Your Value**<br>**Right Pleural Fluid** | | |
| **Clinical Information** | **Your Value**<br>**The patient is an 80-year-old male with a past medical history of prostate cancer, former smoker, with recurrent right pleural effusion.** | | |
| **Gross Description** | **Your Value**<br>**Received in: Without fixative**<br>**Labeled as: Right Pleural Fluid**<br>**Quantity and quality: 35 ml yellow fluid**<br>**Prepared for microscopic examination:**<br>**2 Cytospin(s)**<br>**Diff Quik stain: 1**<br>**Papanicolaou stain: 1**<br>**1 Cell block(s), slides stained with H & E** | | |
| **Non Clinical Document** | **Your Value** | | |

| Component | Your Value | Standard Range | Flag |
|---|---|---|---|
| | Processing and screening performed at Memorial Hermann Southwest Hospital, 7600 Beechnut, Houston, Texas 77074. Microscopic evaluation and diagnosis performed at Memorial Hermann-TMC Hospital, 6411 Fannin, Houston, TX 77030. CPT code: 88108 -GC, 88305 -GC, 88342 -GC, 88341x4 -GC | | |

| Teaching Physician Statement | Your Value |
|---|---|
| | "I have personally reviewed the resident's preliminary interpretation and all specimen preparations and have personally issued this report". |

## General Information

Ordered by Pushan Jani

Collected on 06/16/2023 12:00 PM

Resulted on 06/16/2023 12:00 PM

Result Status: Final result

This test result has been released by an automatic process.

MyChart® licensed from Epic Systems Corporation © 1999 - 2023

SSA-1826
VERSION 1984.002 * * * ITEMIZED STATEMENT OF EARNINGS FOR SSN 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 * * *

JOB:

WHS = SEE WORK HISTORY SHEET
NR = NO RECOLLECTION OF JOB
NE = NO EXPOSURE TO ASBESTOS

FROM: SOCIAL SECURITY ADMINISTRATION
OFFICE OF CENTRAL RECORDS OPERATIONS
BALTIMORE, MARYLAND 21235-0000

BARON & BUDD P C

3102 OAK LAWN AVENUE

STE 1100
DALLAS TX 75219-4281

NUMBER HOLDER NAME:
JAY W SANDERS JR

PERIOD REQUESTED JANUARY 1959 THRU DECEMBER 1995

| YEAR | JAN - MARCH | APRIL -JUNE | JULY - SEPT | OCT - DEC | TOTAL |
|---|---|---|---|---|---|

EMPLOYER NUMBER: 34-9990000
DEFENSE FINANCE & ACCOUNTING SRVC
CLEVELAND CENTER CODE FT
DIRECTORATE OF TREASURY OPERATIONS
1240 EAST NINTH STREET
CLEVELAND, OH 44199

WHS

| YEAR | JAN - MARCH | APRIL -JUNE | JULY - SEPT | OCT - DEC | TOTAL |
|---|---|---|---|---|---|
| 1960 | 117.00 | 250.12 | 257.40 | 257.40 | $ 881.92 |
| 1961 | 257.40 | 257.40 | 257.40 | 257.40 | $ 1,029.60 |
| 1962 | 290.70 | 324.00 | 364.00 | 368.00 | $ 1,346.70 |
| 1963 | 372.00 | 372.00 | 372.00 | 465.00 | $ 1,581.00 |
| 1964 | 575.00 | 565.00 | 584.17 | 161.00 | $ 1,885.17 |

EMPLOYER NUMBER: 74-0998570
H B ZACHRY CO
ACCOUNTING DEPT
P O BOX 2570
SAN ANTONIO, TX 78206

WHS

| YEAR | JAN - MARCH | APRIL -JUNE | JULY - SEPT | OCT - DEC | TOTAL |
|---|---|---|---|---|---|
| 1964 | | | | 506.00 | $ 506.00 |
| 1965 | 352.00 | | | | $ 352.00 |

EMPLOYER NUMBER: 74-0529760
BROWN & ROOT INC
PO BOX 3
HOUSTON, TX 77001

WHS

| YEAR | JAN - MARCH | APRIL -JUNE | JULY - SEPT | OCT - DEC | TOTAL |
|---|---|---|---|---|---|
| 1965 | 132.75 | 198.00 | | | $ 330.75 |



PLAINTIFF'S EXHIBIT "A"

SSA-1826 ITEMIZED STATEMENT OF EARNINGS JOB:
VERSION 1984.002 * * * FOR SSN 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 * * *

EMPLOYER NUMBER: 74-1187651
JOE C NORMAN
JOE C NORMAN EQUIPMENT CO
PO BIOX 1447
ORANGE, TX 77631

| YEAR | JAN - MARCH | APRIL -JUNE | JULY - SEPT | OCT - DEC | TOTAL |
|---|---|---|---|---|---|
| 1965 | 144.00 | | | | $ 144.00 |

EMPLOYER NUMBER: 13-0430480
AMERICAN CAN CO
100 PARK AVE
NEW YORK, NY 10017

| YEAR | JAN - MARCH | APRIL -JUNE | JULY - SEPT | OCT - DEC | TOTAL |
|---|---|---|---|---|---|
| 1965 | | 556.36 | 1,534.12 | | $ 2,090.48 |

EMPLOYER NUMBER: 74-1532810
TRIANGLE MAINTENANCE CORP
PO BOX 22226
HOUSTON, TX 77227

| YEAR | JAN - MARCH | APRIL -JUNE | JULY - SEPT | OCT - DEC | TOTAL |
|---|---|---|---|---|---|
| 1965 | | | 190.38 | 52.44 | $ 242.82 |

EMPLOYER NUMBER: 74-1235514
A J MUNDY INC
PO BOX 22226
HOUSTON, TX 77227

| YEAR | JAN - MARCH | APRIL -JUNE | JULY - SEPT | OCT - DEC | TOTAL |
|---|---|---|---|---|---|
| 1965 | | | | 1,751.61 | $ 1,751.61 |
| 1966 | 377.97 | | | | $ 377.97 |

EMPLOYER NUMBER: 74-1537034
INDUSTRIAL PLANT MAINTENANCE INC
PO BOX 22226
HOUSTON, TX 77227

| YEAR | JAN - MARCH | APRIL -JUNE | JULY - SEPT | OCT - DEC | TOTAL |
|---|---|---|---|---|---|
| 1966 | 1,109.40 | 722.40 | | | $ 1,831.80 |

SSA-1826
VERSION 1984.002 * * *

ITEMIZED STATEMENT OF EARNINGS
FOR SSN 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 * * *

JOB:

| YEAR | JAN - MARCH | APRIL -JUNE | JULY - SEPT | OCT - DEC | | TOTAL |
|---|---|---|---|---|---|---|

EMPLOYER NUMBER: 38-1123360
UPJOHN COMPANY
% PAMELA S KNOWLTON
7000 PORTAGE RD UNIT 8110-243-100
KALAMAZOO, MI 49001

WAS

| YEAR | JAN - MARCH | APRIL -JUNE | JULY - SEPT | OCT - DEC | | TOTAL |
|---|---|---|---|---|---|---|
| 1966 | | 1,123.01 | 2,048.70 | 2,233.43 | $ | 5,405.14 |
| 1967 | 2,492.56 | 2,261.22 | 1,846.22 | | $ | 6,600.00 |
| 1968 | 2,459.83 | 2,320.69 | 2,432.11 | 587.37 | $ | 7,800.00 |
| 1969 | 2,503.85 | 3,001.93 | 2,294.22 | | $ | 7,800.00 |
| 1970 | 2,788.34 | 3,050.85 | 1,960.81 | | $ | 7,800.00 |
| 1971 | 3,242.89 | 3,491.07 | 1,066.04 | | $ | 7,800.00 |
| 1972 | 3,538.84 | 4,021.80 | 1,439.36 | | $ | 9,000.00 |
| 1973 | 3,848.93 | 4,670.17 | 2,280.90 | | $ | 10,800.00 |
| 1974 | 3,973.00 | 4,089.00 | 4,201.00 | 937.00 | $ | 13,200.00 |
| 1975 | 4,718.00 | 4,788.00 | 4,594.00 | | $ | 14,100.00 |
| 1976 | 5,195.28 | 5,222.76 | 4,881.96 | | $ | 15,300.00 |
| 1977 | 5,555.28 | 6,098.86 | 4,845.86 | | $ | 16,500.00 |
| 1978 | - | - | - | - | $ | 17,700.00 |
| 1979 | - | - | - | - | $ | 22,900.00 |
| 1980 | - | - | - | - | $ | 25,900.00 |
| 1981 | - | - | - | - | $ | 29,700.00 |
| 1982 | - | - | - | - | $ | 32,400.00 |
| 1983 | - | - | - | - | $ | 35,700.00 |
| 1984 | - | - | - | - | $ | 37,800.00 |

EMPLOYER NUMBER: 38-1285128
DOW CHEMICAL CO
2030 DOW CENTER TAX DEPT
MIDLAND, MI 48674

| YEAR | JAN - MARCH | APRIL -JUNE | JULY - SEPT | OCT - DEC | | TOTAL |
|---|---|---|---|---|---|---|
| 1985 | - | - | - | - | $ | 39,600.00 |
| 1986 | - | - | - | - | $ | 42,000.00 |
| 1987 | - | - | - | - | $ | 43,800.00 |
| 1988 | - | - | - | - | $ | 45,000.00 |
| 1989 | - | - | - | - | $ | 48,000.00 |
| 1990 | - | - | - | - | $ | 51,300.00 |
| 1991 | - | - | - | - | $ | 66,072.36 |
| 1992 | - | - | - | - | $ | 63,389.17 |

SSA-1826 ITEMIZED STATEMENT OF EARNINGS JOB:
VERSION 1984.002 * * * FOR SSN 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 * * *

| YEAR | JAN - MARCH | APRIL -JUNE | JULY - SEPT | OCT - DEC | TOTAL |
|---|---|---|---|---|---|
| 1993 | - | - | - | - | $ 64,121.28 |
| 1994 | - | - | - | - | $ 70,085.81 |

EMPLOYER NUMBER: 76-0178498
ADMINISTAFF INC
19001 CRESCENT SPRINGS DR
KINGWOOD, TX 77339

NE

| | | | | | |
|---|---|---|---|---|---|
| 1995 | - | - | - | - | $ 11,499.38 |

EMPLOYER NUMBER: 76-0313275
HOUSTON AREA CONTRACTORS SAFETY
COUNCIL
1803 CENTER ST
DEER PARK, TX 77536

NE

| | | | | | |
|---|---|---|---|---|---|
| 1995 | - | - | - | - | $ 22,514.56 |

THERE ARE NO OTHER EARNINGS RECORDED UNDER THIS SOCIAL SECURITY NUMBER FOR THE PERIOD(S) REQUESTED.

EARNINGS FOR THE YEARS AFTER 1994 MAY NOT BE SHOWN, OR ONLY PARTIALLY SHOWN, BECAUSE THEY MAY NOT YET BE ON OUR RECORDS.

ELECTRONICALLY FILED
Superior Court of California,
County of Alameda
08/18/2023 at 07:36:48 PM
By: Chan Huang,
Deputy Clerk

ROGER E. GOLD, ESQ. [SBN 214802]
rgold@rgoldlegal.com
CECIL B. CRAIN (State Bar No. 252780)
ccrain@rgoldlegal.com
**GOLD LAW FIRM**
591 Redwood Hwy, Building 4000
Mill Valley, CA 94941
Tel: (415) 869-6990
Fax: (415) 373-4579

Attorneys for Plaintiffs
JAY W. SANDERS, JR., and JUDY M. SANDERS

**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF ALAMEDA**

(UNLIMITED JURISDICTION)

| | |
|---|---|
| JAY W. SANDERS and JUDY M. SANDERS,<br><br>Plaintiff,<br><br>vs.<br><br>3M COMPANY, et al.,<br><br>Defendants. | Case No: 23CV041073<br><br>PRELIMINARY FACT SHEET NEW FILING/ASBESTOS LITIGATION<br>(*See* Order, filed February 19, 2015) |

**NOTICE**

**TO NEW DEFENDANTS SERVED IN COMPLEX ASBESTOS LITIGATION IN THE SUPERIOR COURT IN AND FOR THE STATE OF CALIFORNIA, CITY AND COUNTY OF ALAMEDA:**

You have been served with process in an action which has been designated by the Court as complex litigation pursuant to Standard 3.10 of the California Rules of Court. Accordingly, the following information in connection with the above captioned matter is critical for the Court to determine if early and prompt Court intervention is needed, to fashion an appropriate cases management schedule, and otherwise effectively manage this case from the outset of litigation.

This litigation is governed by the Case Management Order, filed with this Court on February 19, 2015, some of which affect the judicial management and/or discovery obligations, including the responsibility to answer interrogatories deemed propounded in the case. You may contact the Court or Designated Defense Counsel, Spanos | Przetak, 475 14th Street, Suite 550, Oakland, CA 94612; Telephone: (510) 250-0200; Fax: (510) 380-6354, for further information and/or copies of these orders, at your expense.

///

///

1. Do you anticipate filing a motion for preferential trial date within the next four months?

_X_ Yes ______ No

2. Do you anticipate serving notice of Plaintiff's deposition for preservation purposes within the next 60 days?

_X_ Yes ______ No

3. Specify the nature or type of asbestos-related disease alleged by each exposed person:

___ Asbestosis _X_ Mesothelioma ____ Pleural Thickening/Plaques

____ Lung Cancer Other Than Mesothelioma ___ Other: Specify: ____________

4. Please provide full name, gender, date of birth, current address and, if applicable, date of death, of each person alleged to have been exposed to asbestos:

| FULL NAME | GENDER | ADDRESS | D.O.B. | D.O.D. |
|---|---|---|---|---|
| Jay W. Sanders, I | Male | deceased | 1922 | 1996 |
| Jay W. Sanders, II | Male | 7030 Tejas, Baytown, Texas 77521-5057 | 2/9/1943 | N/A |

5. Provide EMPLOYMENT information, to the extent known at this time, for each person alleged to have been exposed to asbestos.

| FULL NAME | DATES | EMPLOYER | JOB SITE ADDRESS | JOB TITLE |
|---|---|---|---|---|
| Jay W. Sanders, I | 1951-1953 | Gulf Oil | Gulf Oil refinery, Port Arthur, Texas | pipefitter |
| Jay W. Sanders, II | 1960-1964 | United States Navy | San Diego Naval Training Center and Shipyard, San Diego, California; USS BON HOMME RICHARD (CVA-31), Puget Sound Naval Shipyard, Bremerton, Washington; Alameda Naval Air Station, Alameda, California | Machinist mate (MM3) |
| Jay W. Sanders, II | 1964 | H.B. Zachry | Central Power & Light steam power plant, Corpus Christi, Texas | Pipefitter's helper |

| | | | | |
|---|---|---|---|---|
| Jay W. Sanders II | 1965 | Brown & Root | Central Power & Light steam power plant, San Antonio, Texas | Pipefitter's helper |
| Jay W. Sanders, II | 1965 | American Can | American Can factory, La Porte,Texas | Helper, stacker tender |
| Jay W. Sanders, II | 1965-1966 | A.J. Mundy *aka* Industrial Plant Maintenance *aka* Triangle Maintenance | Upjohn chemical plant, La Porte, Texas | Helper, operator trainee, operator |
| Jay W. Sanders, II | 1966-1979 | Upjohn; Dow Chemical Company | Upjohn/Dow Chemical plant, La Porte, Texas | Operator |
| Jay W. Sanders | 1956-1990s | Self-employed household friction | Residences, Port Arthur, Kennedy, Pasadena, Deerpark, Texas | Home auto mechanic his own and family members' vehicles |

6. Please provide any other information that you wish to bring to the Court's attention for cases management purposes: None at this time.

Dated: August 15, 2023

**GOLD LAW FIRM**

[signature]

Roger E. Gold
Attorneys for Plaintiffs

| SUPERIOR COURT OF CALIFORNIA COUNTY OF ALAMEDA | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS: Rene C. Davidson Courthouse Administration Building, 1221 Oak Street, Oakland, CA 94612 | FILED Superior Court of California County of Alameda 08/18/2023 Chad Finke, Executive Officer / Clerk of the Court By: C. Huang Deputy |
| PLAINTIFF: JAY W. SANDERS, Jr. et al | |
| DEFENDANT: 3M COMPANY et al | |
| **NOTICE OF CASE MANAGEMENT CONFERENCE** | CASE NUMBER: 23CV041073 |

TO THE PLAINTIFF(S)/ATTORNY(S) FOR PLAINTIFF(S) OF RECORD:

You are ordered to serve all named defendants and file proofs of service on those defendants with the court within 60 days of the filing of the complaint (Cal. Rules of Court, 3.110(b)).

Give notice of this conference to all other parties and file proof of service.

Your Case Management Conference has been scheduled on:

| Date: 01/02/2024 | Time: 8:30 AM | Dept.: 18 |
|---|---|---|
| Location: Rene C. Davidson Courthouse Administration Building, 1221 Oak Street, Oakland, CA 94612 | | |

TO DEFENDANT(S)/ATTORNEY(S) FOR DEFENDANT(S) OF RECORD:

The setting of the Case Management Conference does not exempt the defendant from filing a responsive pleading as required by law, you must respond as stated on the summons.

TO ALL PARTIES who have appeared before the date of the conference must:

Pursuant to California Rules of Court, 3.725, a completed Case Management Statement (Judicial Council form CM-110) must be filed and served at least 15 calendar days before the Case Management Conference. The Case Management Statement may be filed jointly by all parties/attorneys of record or individually by each party/attorney of record.

**Meet and confer**, in person or by telephone as required by Cal. Rules of Court, rule 3.724.

**Post jury fees** as required by Code of Civil Procedure section 631.

If you do not follow the orders above, the court may issue an order to show cause why you should not be sanctioned under Cal. Rules of Court, rule 2.30. Sanctions may include monetary sanctions, striking pleadings or dismissal of the action.

The judge may place a Tentative Case Management Order in your case's on-line register of actions before the conference. This order may establish a discovery schedule, set a trial date or refer the case to Alternate Dispute Resolution, such as mediation or arbitration. Check the court's eCourt Public Portal for each assigned department's procedures regarding tentative case management orders at https://eportal.alameda.courts.ca.gov.

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF ALAMEDA | Reserved for Clerk's File Stamp<br><br>**FILED**<br>Superior Court of California<br>County of Alameda<br>08/18/2023<br>Chad Finke, Executive Officer / Clerk of the Court<br>By: ______ Deputy<br>C. Huang |
|---|---|
| COURTHOUSE ADDRESS:<br>Rene C. Davidson Courthouse<br>1225 Fallon Street, Oakland, CA 94612 | |
| PLAINTIFF/PETITIONER:<br>JAY W. SANDERS, Jr. et al | |
| DEFENDANT/RESPONDENT:<br>3M COMPANY et al | |
| **CERTIFICATE OF MAILING** | CASE NUMBER:<br>23CV041073 |

**I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the attached document upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Hayward, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.**

Roger Edward Gold
555 Montgomery St Ste 605
San Francisco, CA 94111

Chad Finke, Executive Officer / Clerk of the Court

Dated: 08/23/2023

By:

C. Huang, Deputy Clerk